**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
04/15/2019

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JONES ENERGY, INC., *et al.*,[1] | ) | Case No. 19-32112 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Re:  Docket No.  21** |

**ORDER (I) SCHEDULING A COMBINED
DISCLOSURE STATEMENT APPROVAL AND PLAN
CONFIRMATION HEARING, (II) ESTABLISHING PLAN AND
DISCLOSURE STATEMENT OBJECTION AND REPLY DEADLINES AND RELATED
PROCEDURES, (III) WAIVING THE REQUIREMENT THAT THE U.S. TRUSTEE
CONVENE A MEETING OF CREDITORS, AND (VI) GRANTING RELATED RELIEF**

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors

in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) approving the

Confirmation Schedule, including (i) allowing the notice period for the Disclosure Statement and

Confirmation Hearing to run simultaneously, (ii) scheduling a Combined Hearing on the adequacy

of the Disclosure Statement and confirmation of the Plan, (iii) establishing the Objection Deadline

and approving related procedures, and (iv) establishing the Reply Deadline; (b) directing that the

U.S. Trustee not convene a Creditors' Meeting under section 341(e) of the Bankruptcy Code, all

as more fully set forth in the Motion; and upon the First Day Declaration and the Sullivan

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Jones Energy, Inc. (7968); Jones Energy, LLC (8861); CCPR Sub LLC (0942); Jones Energy Finance Corp. (6247); Jones Energy Holdings, LLC (5091); Jones Energy Intermediate, LLC (3552); JRJ Opco, LLC (1488); Nosley Acquisition, LLC (1548); Nosley Assets, LLC (6460); Nosley Midstream, LLC (8315); and Nosley SCOOP, LLC (1108).  The location of Jones Energy, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is: 807 Las Cimas Parkway, Suite 350, Austin, TX 78746.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Combined Hearing, at which time this Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on May 6, 2019, at 1:30 p.m., prevailing Central Time.

3.      Any objections to adequacy of the Disclosure Statement and confirmation of the Plan shall be filed on or before May 1, 2019, at 4:00 p.m., prevailing Central Time.

4.      Any brief in support of confirmation of the Plan and reply to any objections shall be filed on or before May 3, at 12:00 p.m., prevailing Central Time.

5.      Any objections to the Disclosure Statement or confirmation of the Plan must:

a.      be in writing;

b.      comply with the Bankruptcy Rules and the Bankruptcy Local Rules;

c.      state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity;

d.      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

e.      be filed with this Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

6.     Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled.

7.     The U.S. Trustee shall defer convening a Creditors' Meeting pursuant to section 341(e) of the Bankruptcy Code until May 21, 2019, and shall not convene a Creditors' Meeting unless the Plan is not confirmed on or before May 21, 2019.

8.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  April 15, 2019.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

24

**Exhibit 1**

**Combined Notice**



Dated as of April 3, 2019

<u>Subject</u>:  **Announcement of Restructuring Support Agreement, Summary of Plan of Reorganization, Information Regarding Key Dates and Certain Other Matters.**

To Whom It May Concern:

On April 2, 2019, after engaging in extensive, arm's-length, good-faith negotiations, Jones Energy, Inc. ("<u>JEI</u>") and certain of its affiliates and subsidiaries (collectively, "<u>Jones Energy</u>" or the "<u>Company</u>")[1] and holders of approximately 84% in principal of the First Lien Notes and approximately 84% in principal of the Unsecured Notes (collectively, the "<u>Consenting Stakeholders</u>") entered into a restructuring support agreement (the "<u>Restructuring Support Agreement</u>") that contemplates a comprehensive balance sheet restructuring to be implemented through a prepackaged chapter 11 plan (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "<u>Plan</u>").[2]  The parties to the Restructuring Support Agreement include, among others: (i) Jones Energy, represented by Kirkland & Ellis LLP and Jackson Walker LLP, (ii) an ad hoc group of holders of First Lien Notes, represented by Milbank LLP (the "<u>First Lien Ad Hoc Group</u>"), and (iii) an ad hoc group of holders of First Lien Notes and Unsecured Notes, represented by Davis Polk & Wardwell LLP (the "<u>Crossover Group</u>").

The Restructuring Transactions provided for in the Plan will fully equitize the Company's outstanding funded debt and include fully committed exit financing, strengthening its balance sheet and enhancing financial flexibility going forward.  **<u>Importantly, the Plan provides for the satisfaction of all trade, customer, employee, and other non-funded debt claims in full, in the ordinary course of business, other than general unsecured claims against JEI and/or Jones Energy Intermediate, LLC</u>** ("<u>JEI, LLC</u>").  Jones Energy will continue to operate in the normal course and its business operations will not be disrupted by the restructuring process.  Jones Energy continues to have adequate liquidity to meet its financial obligations to vendors, suppliers, and employees, and expects to continue making payments to these parties without interruption.

This notice sets forth information regarding the Plan and the treatment of Claims and Interests thereunder, key dates and deadlines regarding the Plan and the Disclosure Statement, and certain other relevant information.  Any information set forth herein is qualified in its entirety by the terms of the Plan. In the event of any inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

---

[1]    The anticipated debtors in these chapter 11 cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Jones Energy, Inc. (7968); Jones Energy, LLC (8861); CCPR Sub LLC (0942); Jones Energy Finance Corp. (6247); Jones Energy Holdings, LLC (5091); Jones Energy Intermediate, LLC (      ); JRJ Opco, LLC (1488); Nosley Acquisition, LLC (1548); Nosley Assets, LLC (6460); Nosley Midstream, LLC (8315); and Nosley SCOOP, LLC (1108).  The location of Jones Energy, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is: 807 Las Cimas Parkway, Suite 350, Austin, TX 78746.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. The Plan is attached as <u>Exhibit A</u> to, and described in greater detail in, the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Jones Energy, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time including all exhibits or supplements thereto, the "<u>Disclosure Statement</u>").

**Key Terms of the Plan**[1]

The Plan, provides, among other things, that upon emergence:

- all Other Secured Claims shall receive, (i) payment in full in Cash of its Allowed Class 1 Claim; (ii) the collateral securing its Allowed Class 1 Claim; (iii) Reinstatement of its Allowed Class 1 Claim; or (iv) such other treatment that renders such Allowed Claims Unimpaired under the Bankruptcy Code;

- all Other Priority Claims will be paid in full in Cash, or receive such other customary treatment that renders such Allowed Other Priority Claims Unimpaired under the Bankruptcy Code;

- all Hedge Claims/RBL Claims will be paid in full in Cash, or receive such other treatment that renders such Allowed Hedge Claim or Allowed RBL Claim Unimpaired under the Bankruptcy Code;

- each holder of Allowed First Lien Notes Claims shall receive its Pro Rata share of 96% of the New Common Equity, subject to dilution on account of the Management Incentive Plan and the New Warrants;

- each holder of Allowed Unsecured Notes Claims shall receive its Pro Rata share of:  (i) 4% of the New Common Equity, subject to dilution on account of the Management Incentive Plan and the New Warrants; and (ii) the New Warrants;

- all outstanding and undisputed General Unsecured Claims against Debtors other than JEI and JEI, LLC will be Unimpaired and unaffected by the Chapter 11 Cases, and will be paid in full in Cash or Reinstated and satisfied in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such claim;

- all outstanding and undisputed General Unsecured Claims against JEI and/or JEI, LLC shall receive $0;

- holders of Existing Preferred Equity Interests and/or Existing Common Equity Interests will not receive any distribution on account of such Interests, which will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect;

- Jones Energy, as reorganized pursuant to the Plan, will enter into an exit financing facility backstopped by the Consenting Stakeholders; and

- Jones Energy, as reorganized pursuant to the Plan, will issue the New Common Stock to holders of Allowed First Lien Notes Claims and Allowed Unsecured Notes Claims and the New Warrants to holders of Allowed Unsecured Notes Claims, in each case, as set forth in the Plan.

---

[1]   This summary is qualified in its entirety by the terms of the Plan.  In the event of any inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

The following chart summarizes the classification of Claims and Interests set forth in the Plan and indicates whether each such class is entitled to vote on the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Hedge Claims / RBL Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | First Lien Notes Claims | Impaired | Entitled to Vote |
| Class 5 | Unsecured Notes Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims against Debtors other than JEI and JEI, LLC | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | General Unsecured Claims against JEI and/or JEI, LLC | Impaired | Entitled to Vote |
| Class 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 9 | Existing Preferred Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Existing Common Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 11 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |

The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned ballot; (d) any ballot that does not contain an original signature; (e) any ballot that partially rejects and partially accepts the Plan; (f) any ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; (g) any simultaneously cast, inconsistent duplicate ballots, with respect to the same Claim; and (g) any ballot superseded by a later, timely submitted valid ballot.

## Key Dates and Information Regarding Confirmation of the Plan

To implement the financial restructuring contemplated by the Restructuring Support Agreement, the Company expects to file voluntary petitions for reorganization pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court") on or before April 15, 2019 (the date of commencement, the "Petition Date").

On April 3, 2019, Jones Energy commenced a solicitation of acceptances of the Plan from holders of claims that are eligible to vote, Class 4 (First Lien Notes Claims), Class 5 (Unsecured Notes Claims), and Class 7 (General Unsecured Claims against JEI and/or JEI, LLC) (each, a "Voting Class"), with respect to the Plan in accordance with section 1125 of the Bankruptcy Code and within the meaning of section 1126 of the Bankruptcy Code. Holders of more than two-thirds of the claims in each of Class 4 and Class 5 have committed to voting in favor of the Plan by signing the Restructuring Support Agreement. Jones Energy expects to meet the requirements for confirmation of the Plan and to emerge from bankruptcy shortly after filing.

The Debtors will request that the Bankruptcy Court convene a hearing to **approve the adequacy of the Disclosure Statement and confirm the Plan** (the "Combined Hearing") on **May 6, 2019, subject to the availability of the Bankruptcy Court.** The Combined Hearing may be continued from time to time by announcing such continuance in open court and the Plan may be further modified, if necessary, subject to section 1127 of the Bankruptcy Code, prior to, during, or as a result of the Combined Hearing, without further notice to parties in interest.

Any **objections** to the adequacy of the Disclosure Statement or confirmation of the Plan must:

(i)     be in writing;

(ii)    comply with the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of Texas, and other case management rules and orders of the Bankruptcy Court;

(iii)   set forth the name of the objector, and the nature and amount of any claim or interest asserted by the objector against the estate or property of Jones Energy;

(iv)    state with particularity the legal and factual basis for such objection; and

(v)     be served by personal service or by overnight delivery, so as to be **ACTUALLY RECEIVED no later than 4:00 p.m. (prevailing Central time) on May 1, 2019,** by: (a) Jones Energy, Inc., 807 Las Cimas Parkway, Suite 350, Austin, TX 78746, Attn: Carl Giesler; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher Marcus, P.C., Brian E. Schartz, P.C., Anthony R. Grossi, and Rebecca Blake Chaikin; (c) proposed co-counsel to the Debtors, Jackson Walker L.L.P., 1401 McKinney Street, Houston, Texas 77010, Attn: Matthew D. Cavenaugh; (d) the Office of The United States Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 7702; (e) counsel to the First Lien Ad Hoc Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Evan R. Fleck and Michael Price; (f) counsel to the Crossover Group, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Brian M. Resnick and Benjamin Schak; and (g) local counsel to the Crossover Group, Haynes and Boone, LLP, 1221 McKinney St., Suite 2100, Houston, Texas 77010, Attn: Charlie Beckham and Kelli Norfleet.

**<u>Where May Interested Parties Obtain Copies of the Plan and Disclosure Statement?</u>**

Copies of the Plan, Disclosure Statement, Restructuring Support Agreement, and related documents may be obtained free of charge: (1) by contacting Epiq Corporate Restructuring, LLC (the "Notice and Claims Agent") by phone at +1 (877) 330-3471 (toll free) or +1 (503) 597-5602 (international); (2) by email at tabulation@epiqglobal.com, including "Jones Energy" in the subject line of any such email; or (3) through Jones Energy's solicitation website at https://dm.epiq11.com/JonesEnergy.

Following the commencement of Jones Energy's chapter 11 cases, all pleadings filed in the cases (i) may be inspected at the office of the Clerk of the Bankruptcy Court for the Southern District of Texas, P.O. Box 61010, Houston, Texas 77208 (the "Clerk's Office") and (ii) will be available through the Court's electronic case filing system at https://www.txs.uscourts.gov/page/bankruptcy-court using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov), or on the website maintained by the Notice and Claims Agent at https://dm.epiq11.com/JonesEnergy.

Furthermore a case information line has been established at +1 (877) 330-3471 (toll free) or +1 (503) 597-5602 (international).  **PLEASE NOTE that the staff of the Clerk's Office, the United States Trustee, Jones Energy's proposed restructuring counsel, and the Notice and Claims Agent cannot give legal advice.  Consult a lawyer to determine your rights.**

### Meeting of Creditors Pursuant to Section 341

As part of the relief requested by Jones Energy in connection with the filing of its chapter 11 cases, Jones Energy will request that the U.S. Trustee **NOT** be required to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code.

### Releases, Injunction, and Exculpation Provisions

Article IX of the Plan contains the following release, injunction, and exculpation provisions.  **YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

**Holders of Claims and Interests may opt out of the third-party release set forth below by checking the appropriate box on their ballot or notice of non-voting status, as applicable.**

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part: the Debtors (including the management, ownership, or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement**

the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, the Reorganized Debtors, and each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan;

**(c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***RELEASED PARTY***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASED PARTY."

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; AND (L) ALL HOLDERS OF CLAIMS OR INTERESTS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE

PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASING PARTY."

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

> **Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

> **The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan.**

Definition related to the Exculpation:

UNDER THE PLAN, "***EXCULPATED PARTIES***" MEANS COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL

ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS.

Article IX.E of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F hereof.**

\*      \*      \*      \*      \*

## **Exhibit 2**

**Notice of Non-Voting Status and Opportunity to Opt Out**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| JONES ENERGY, INC., *et al.*,[1] | **IMPORTANT**: No chapter 11 case has been commenced as of the date of distribution of this notice. |
| Debtors. | |

**NOTICE OF (A) NON-VOTING STATUS TO HOLDERS**
**OR POTENTIAL HOLDERS OF (I) UNIMPAIRED CLAIMS**
**CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN**
**AND (II) IMPAIRED CLAIMS CONCLUSIVELY PRESUMED**
**TO REJECT THE PLAN AND (B) OPPORTUNITY FOR HOLDERS OF**
**CLAIMS AND INTERESTS TO OPT OUT OF THE THIRD-PARTY RELEASES**

**PLEASE TAKE NOTICE THAT** Jones Energy, Inc. and its affiliates ("Jones Energy") intend to commence Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and seek to consummate the Restructuring Transactions contemplated by the *Joint Chapter 11 Plan of Reorganization of Jones Energy, Inc. and Its Debtor Affiliates* (the "Plan")[2] through the chapter 11 bankruptcy process and the Plan. The Company will file the Plan and the related *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Jones Energy, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time including all exhibits or supplements thereto, the "Disclosure Statement") with the Bankruptcy Court on or shortly after the date of the filing of the Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT** you are a holder or potential holder of a Claim against or Interest in Jones Energy that, due to the nature and treatment of such Claim or Interest under the Plan, ***is not entitled to vote on the Plan***. Specifically, under the terms of the Plan, (i) a holder of a Claim in a Class that is not Impaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and (ii) a holder of a Claim or Interest in a Class that is Impaired under the Plan and, therefore, deemed to reject the Plan pursuant to section 1126(g), is ***not*** entitled to vote on the Plan.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:   Jones Energy, Inc. (7968); Jones Energy, LLC (8861); CCPR Sub LLC (0942); Jones Energy Finance Corp. (6247); Jones Energy Holdings, LLC (5091); Jones Energy Intermediate, LLC (   ); JRJ Opco, LLC (1488); Nosley Acquisition, LLC (1548); Nosley Assets, LLC (6460); Nosley Midstream, LLC (8315); and Nosley SCOOP, LLC (1108).   The location of Jones Energy, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is: 807 Las Cimas Parkway, Suite 350, Austin, TX 78746.

[2]   Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents at no additional cost**, you should contact Epiq Corporate Restructuring, LLC, the Debtors' proposed solicitation agent in the chapter 11 cases (the "Solicitation Agent"), by: (a) visiting the Debtors' restructuring website at: https://dm.epiq11.com/JonesEnergy; (b) writing to Epiq Corporate Restructuring, LLC Re: Jones Energy, 10300 SW Allen Blvd., Beaverton, OR 97005; (c) emailing tabulation@epiqglobal.com; and/or (d) calling the Debtors' restructuring hotline at the following number:

**US/CANADA TOLL FREE: (877) 330-3471 or INTERNATIONAL: (503) 597-5602**

Following the commencement of the Chapter 11 Cases, all pleadings filed in the cases (i) may be inspected at the office of the Clerk of the Bankruptcy Court for the Southern District of Texas, P.O. Box 61010, Houston, Texas 77208 (the "Clerk's Office") and (ii) will also be available through the Court's electronic case filing system at https://www.txs.uscourts.gov/page/bankruptcy-court using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov), or on the website maintained by the Notice and Claims Agent at https://dm.epiq11.com/JonesEnergy.

**PLEASE TAKE FURTHER NOTICE** of the following provisions in the Plan:

---

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS THE FOLLOWING THIRD-PARTY RELEASE:**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, the Reorganized Debtors, and each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final**

2

**Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Third-Party Release:

Under the Plan, "*Released Party*" means each of the following, solely in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c)  the First Lien Notes Trustee; (d) the First Lien Notes Collateral Agent; (e) the First Lien Ad Hoc Group and all members thereof; (f) the Unsecured Notes Trustee; (g) the Crossover Group and all members thereof; (h) the Exit Backstop Participants; (i) the Exit Facility Agent; (j) the Exit Facility Lenders; (k) with respect to each of the foregoing parties in clauses (a) through (j), each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies; and (l) with respect to each of the foregoing parties in clauses (a) through (k), each of such party's current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors or sub-advisors, and other professionals; *provided* that any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan, (y) files an objection to the releases contained in the Plan by the Plan Objection Deadline, or (z) timely votes to reject the Plan shall not be a "Released Party."

Under the Plan, "*Releasing Parties*" means each of the following, solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c)  the First Lien Notes Trustee; (d) the First Lien Notes Collateral Agent; (e) the First Lien Ad Hoc Group and all members thereof; (f) the Unsecured Notes Trustee; (g) the Crossover Group and all members thereof; (h) the Exit Backstop Participants; (i) the Exit Facility Agent; (j) the Exit Facility Lenders; (k) with respect to each of the foregoing parties in clauses (a) through (j), each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies; and (l) with respect to each of the foregoing parties in clauses (a) through (k), each of such party's current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors or sub-advisors, and other professionals; and (l) all holders of Claims or Interests; *provided* that any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan, (y) files an objection to the releases contained in the Plan by the Plan Objection Deadline, or (z) timely votes to reject the Plan shall not be a "Releasing Party."

*        *        *

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE RELEASES, EXCULPATION, INJUNCTION, AND THIRD-PARTY RELEASES PROVIDED IN THE PLAN.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

Houston, Texas
April 3, 2019

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4284
Facsimile:      (713) 308-4184
Email:           mcavenaugh@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Brian E. Schartz, P.C. (TX Bar No. 24099361)
Anna G. Rotman, P.C. (TX Bar No. 24046761)
609 Main Street
Houston, Texas 77002
Telephone:     (713) 836-3600
Facsimile:      (713) 836-3601
Email:           brian.schartz@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher Marcus, P.C. (*pro hac vice* admission pending)
Anthony R. Grossi (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           christopher.marcus@kirkland.com
                 anthony.grossi@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
James H.M. Sprayregen, P.C.
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**OPTIONAL: RELEASE OPT OUT FORM**

You are receiving this opt out form (the "Opt Out Form") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *Joint Chapter 11 Plan of Reorganization of Jones Energy, Inc. and its Debtor Affiliates* (as may be amended from time to time, the "Plan"). Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a holder affirmatively opts out or files an objection to the Third-Party Release with the Bankruptcy Court on or before the Plan Voting Deadline.

**If you believe you are a holder of a Claim or Interest with respect to Jones Energy, Inc. or its affiliates and choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, please complete, sign, and date this Opt Out Form and return it promptly** via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to Epiq Corporate Restructuring, LLC (the "Solicitation Agent") at the address set forth below:

> **Use of Hard Copy Opt Out Form.** To ensure that your hard copy Opt Out Form is counted clearly sign and return your Opt Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to Jones Energy, c/o Epiq Corporate Restructuring LLC, 10300 SW Allen Blvd., Beaverton, OR 97005.

**THIS OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY MAY 1, 2019, AT 4:00 P.M. PREVAILING CENTRAL TIME (THE "RESPONSE DEADLINE"). IF THE OPT OUT FORM IS RECEIVED AFTER THE RESPONSE DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1. Amount of Claim.**

The undersigned hereby certifies that, as of March 27, 2019 (the "Voting Record Date"), the undersigned was the holder of either (a) Class 1 Other Secured Claims, (b) Class 2 Other Priority Claims, (c) Class 3 Hedge Claims / RBL Claims, (d) Class 6 General Unsecured Claims against Debtors other than JEI and JEI, LLC, (e) Class 9 Existing Preferred Equity Interests, or (f) Class 10 Existing Common Equity Interests in the following aggregate amount (insert amount in box below):

| |
|---|
| Class 1 Other Secured Claims Amount $ _____ <br><br> OR <br><br> Class 2 Other Priority Claims Amount $ _____ <br><br> OR <br><br> Class 3 Hedge Claims / RBL Claims Amount $ _____ <br><br> OR <br><br> Class 6 General Unsecured Claims against Debtors other than JEI and JEI, LLC  Amount $ _____ <br><br> OR <br><br> Class 9 Existing Preferred Equity Interests Amount $ _____ <br><br> OR <br><br> Class 10 Existing Common Equity Interests Amount $ _____ |

**Item 2.  Important information regarding the Third-Party Release.**

**Article VIII.D of the Plan contains the following Third-Party Release:**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, the Reorganized Debtors, and each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***RELEASED PARTY***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS,

ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASED PARTY."

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; AND (L) ALL HOLDERS OF CLAIMS OR INTERESTS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASING PARTY."

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE BALLOT BY THE VOTING DEADLINE, (B) FILE AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE, OR (C) VOTE TO REJECT THE PLAN AND SUBMIT THE BALLOT BY THE VOTING DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐   **By checking this box, you elect to opt <u>out</u> of the Third-Party Releases.**

**Item 3.  Certifications.**

By signing this Opt Out Form, the undersigned certifies:

    (a)   that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the Claim or Interests set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claim or Interests set forth in Item 1;

    (b)   that the Holder has received a copy of the *Notice of Non-Voting Status to Holders of (I) Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Impaired Claim Conclusively Presumed to Reject the Plan* and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

    (a)   that the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

    (b)   that no other Opt Out Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT OUT FORM AND RETURN PROMPTLY VIA FIRST CLASS MAIL (OR IN THE REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER OR HAND DELIVERY TO:**

| **If by First Class mail:** | **If by overnight courier or hand delivery:** |
|---|---|
| **Jones Energy Processing** | **Jones Energy Processing** |
| **c/o Epiq Corporate Restructuring, LLC** | **c/o Epiq Corporate Restructuring, LLC** |
| **PO Box 4422** | **10300 SW Allen Boulevard** |
| **Beaverton, OR 97076-4422** | **Beaverton, OR 97005** |

**<u>Exhibit 3</u>**

**Form of Master Ballot**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| JONES ENERGY, INC., *et al.*,[1] | ) **IMPORTANT**: No chapter 11 case has been |
| | ) commenced as of the date of distribution of |
| | ) this ballot.  This ballot is a prepetition |
| | ) solicitation of your vote on a plan of |
| Debtors. | ) reorganization. |
| | ) |

**MASTER BALLOT FOR ACCEPTING OR REJECTING THE JOINT PLAN OF
REORGANIZATION OF JONES ENERGY, INC. AND ITS DEBTOR AFFILIATES**

**CLASS [#] - [DESCRIPTION]**

- IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE DEBTORS' SOLICITATION AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC (THE "<u>SOLICITATION AGENT</u>") AT 866) 897-6433 (TOLL FREE) OR +1 (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM OR EMAIL TABULATION@EPIQGLOBAL.COM AND REFERENCE "JONES ENERGY" IN THE SUBJECT LINE.

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.

- THIS MASTER BALLOT MUST BE **<u>ACTUALLY RECEIVED</u>** BY **4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019** (THE "<u>VOTING DEADLINE</u>").[2]

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND HOLDERS OF CLAIMS AND INTERESTS REGARDLESS OF WHETHER THEY HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE IX OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Jones Energy, Inc. (7968); Jones Energy, LLC (8861); CCPR Sub LLC (0942); Jones Energy Finance Corp. (6247); Jones Energy Holdings, LLC (5091); Jones Energy Intermediate, LLC (3552); JRJ Opco, LLC (1488); Nosley Acquisition, LLC (1548); Nosley Assets, LLC (6460); Nosley Midstream, LLC (8315); and Nosley SCOOP, LLC (1108).  The location of Jones Energy, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is: 807 Las Cimas Parkway, Suite 350, Austin, TX 78746.

[2]   Certain holders who are party to the Restructuring Support Agreement, dated as of April 1, 2019, by and among the Debtors and the noteholders party thereto, have agreed to submit their ballots to the Solicitation Agent by April 11, 2019.

[CUSIP AS  INDICATED ON ATTACHED EXHIBIT B]

> RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS BALLOT.

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT AND THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN (THE "PLAN")[3] OF JONES ENERGY, INC., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11. THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

The Company intends to file Chapter 11 Cases in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan. The Company will file the Plan and the related *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Jones Energy, Inc. and its Debtor Affiliates* and all exhibits related thereto (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") with the Bankruptcy Court on or shortly after the date of the filing of the Chapter 11 Cases. The Disclosure Statement, the Plan, and certain other materials contained in the solicitation package are included in the packet you are receiving with this Master Ballot. This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. **Only Accredited Investors (as such term is defined in Rule 501 of the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa) are entitled to vote to accept or reject the Plan**. The definition of Accredited Investor is attached hereto as **Exhibit A**.

**If you believe that you have received this Master Ballot in error, please contact the Debtors' Solicitation Agent by telephone at (866) 897-6433 (Toll Free) OR +1 (646) 282-2500 (International) and request to speak with a member of the Solicitation Team or via email at tabulation@epiqglobal.com and reference "Jones Energy" in the subject line.**

This master ballot (the "Master Ballot") is to be used by you because records indicate that you are the Nominee (as defined below) of Class [**#**] - [**Description**] as of **March 27, 2019** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee or beneficial owner for the Class [#] - [Description] to transmit to the Solicitation Agent the votes of such beneficial holders in respect of their Class [#] Claims to accept or reject the Plan. CUSIPS for Class [#] Claims entitled to vote are identified on Exhibit B attached hereto.**

The Disclosure Statement describes the rights and treatment for each Class. The Disclosure Statement, the Plan, and certain other materials contained in the solicitation package are included in the packet you are receiving with this Master Ballot. This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.

**THE VOTES ON THIS BALLOT FOR [CLASS DESCRIPTION] CLAIMS SHALL BE APPLIED TO EACH DEBTOR WITH CLASS [#] CLAIMS.**

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder

---

[3]   Capitalized terms, used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Court may confirm the Plan and thereby bind all Beneficial Holders[4] of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Solicitation Agent **actually receives** it on or before the Voting Deadline.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019.**

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐  Is a broker, bank, or other nominee for the beneficial owners of the aggregate principal amount of the Class [#] Claims listed in Item 2 below, and is the record holder of such bonds, or

☐  Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered holder of the aggregate principal amount of Class [#] Claims listed in Item 2 below, or

☐  Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered holder of the aggregate principal amount of Class [#] Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the beneficial owners of the Class [#] Claims described in Item 2.

**Item 2.  Class [#] Claims Vote on Plan and Item 3.  Releases**

The undersigned transmits the following votes and releases of Beneficial Holders of Class **[#] - [Description]** Claims against the Debtors and certifies that the following Beneficial Holders of Class **[#] - [Description]** Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Ballots casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all such of their Class **[#] - [Description]** Claims to accept or reject the Plan and may not split such vote.  Any Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.  If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to the releases by Holders of Claims and Interests, as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column below.  The full text of Article VIII.D is duplicated in the Master Ballot Instructions.

### A SEPARATE MASTER BALLOT MUST BE USED FOR EACH CUSIP.

---

[4]  "Beneficial Holder" is a beneficial owner of Class [#] - [Description] whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

| CUSIP VOTED ON THIS MASTER BALLOT _____ (CUSIP NO.) | | | | | | |
|---|---|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Owner Who Voted in this Plan Class** | **Principal Amount Held as of the Voting Record Date** | **Item 2**<br>Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below. | | | | **Item 3**<br>If the box in Item 3 of the Beneficial Holder Ballot was completed, place an "X" in the column below |
| | | **Accept the Plan** | **or** | **Reject the Plan** | **or** | |
| 1 | $ | | | | | |
| 2 | $ | | | | | |
| 3 | $ | | | | | |
| 4 | $ | | | | | |
| 5 | $ | | | | | |
| 6 | $ | | | | | |
| **TOTALS** | $ | | | | | |

**Item 4.  Certification as to Transcription of Information from Item 4 of the Ballots as to Class [#] Claims Voted Through Other Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 4 of each Ballot received from a Beneficial Holder.  Please use additional sheets of paper if necessary.

| **Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Ballots** | **TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL HOLDER BALLOTS:** | | | |
|---|---|---|---|---|
| | **Account Number of Other Class [#] Claims Voted** | **Name of Owner** | **Principal Amount of Other Class [#] Claims Voted** | **CUSIP of Other Class [#] Claims Voted** |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Ballots | TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number of Other Class [#] Claims Voted | Name of Owner | Principal Amount of Other Class [#] Claims Voted | CUSIP of Other Class [#] Claims Voted |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

5

**Item 5.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.      it has received a copy of the Disclosure Statement, the Plan, the Ballots, and the remainder of the solicitation package and has delivered the same to the Beneficial Holders of the Class [#] Claims listed in Item 2 above or delivered materials via other customary communications used to solicit or collect votes;

2.      it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 of this Master Ballot; or

3.      it is the registered Beneficial Holder of the securities being voted, or

4.      it has been authorized by each such Beneficial Holder to vote on the Plan;

5.      it has properly disclosed:  (a) the number of Beneficial Holders who completed Ballots; (b) the respective amounts of the Class [#] Claims, as the case may be, by each Beneficial Holder who completed a Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) each such Beneficial Holder's certification as to other Class [#] voted; and (e) the customer account or other identification number for each such Beneficial Holder; and

6.      it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

Name of Nominee: _____
                                        (Print or Type)

Participant Number:

                            _____

Name of Proxy Holder or Agent for Nominee (if applicable):

                            _____
                                        (Print or Type)

                            _____

Signature:                _____

Name of Signatory:   _____

Title:                        _____

Address:                   _____

                            _____

                            _____

Date Completed:       _____

Email Address:          _____

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING INSTRUCTIONS, PLEASE CALL THE DEBTOR'S SOLICITATION AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC AT (866) 897-6433 (TOLL FREE) OR +1 (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM OR EMAIL TABULATION@EPIQGLOBAL.COM AND REFERENCE "JONES ENERGY" IN THE SUBJECT LINE.**

**PLEASE COMPLETE, SIGN AND, DATE THE MASTER BALLOT AND RETURN IT PROMPTLY TO:**

---

*By regular mail, hand delivery or overnight mail at:*

Jones Energy Master Ballot Processing
c/o Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, NY 10017

**or**

*If by email to:*

tabulation@epiqglobal.com
with a reference to "Jones Energy Master Ballot" in the subject line.

---

**YOUR MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS <u>4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019</u>**

**MASTER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY E-MAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "JONES ENERGY MASTER BALLOT" IN THE SUBJECT LINE).**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE INSTRUCTIONS, PLEASE CALL THE DEBTORS' SOLICITATION AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC, AT (866) 897-6433 (TOLL FREE) OR +1 (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM OR EMAIL TABULATION@EPIQGLOBAL.COM AND REFERENCE "JONES ENERGY" IN THE SUBJECT LINE.

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

## VOTING INSTRUCTIONS

1.      As described in the Disclosure Statement, the Debtors are soliciting the votes of Beneficial Holders of Class [#] with respect to the Plan referred to in the Disclosure Statement.  The Plan and Disclosure Statement are included in the Solicitation Package you are receiving with the Ballot.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.      The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Beneficial Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.      You should immediately distribute the Ballots (or other customary material used to collect votes in lieu of the Ballot) and solicitation package to all Beneficial Holders of Class [#] Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds.  You may distribute the solicitation packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.   Any Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holders by 4:00 p.m., prevailing Central Time, on May 1, 2019, or otherwise validate the Ballot in a manner acceptable to the Solicitation Agent.

If you are transmitting the votes of any beneficial owners of Class [#] Claims other than yourself, you may either:

(a)     "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class [#] Claim for voting within five (5) Business Days after the receipt by such Nominee of the solicitation package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the solicitation package.  A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Ballot and including their DTC participant name and DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Class [#] Claim held by the Nominee for such Beneficial Holder, and then forwarding the Ballot together with the solicitation package to the Beneficial Holder.  The Beneficial Holder then completes the information requested on the Ballot and returns the Ballot directly to the Solicitation Agent.  A list of the Beneficial Holders to whom "pre-validated" Ballots were delivered should be maintained by nominees for inspection for at least one year from the Effective Date; OR

(b)     Within five (5) Business Days after receipt by such Nominee of the solicitation package, forward the solicitation package to the Beneficial Holder of the Class [#] Claim for voting along with a return envelope provided by and addressed to the Nominee, with the beneficial owner then returning the individual Beneficial Holder Ballot to the Nominee.  In such case, the Nominee will tabulate the votes of its respective Beneficial Owners on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent.  The Nominee should advise the Beneficial Holders to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

Solicitation Agent so that the Master Ballot is <u>actually</u> <u>received</u> by the Solicitation Agent on or before the Voting Deadline.

4.      With regard to any Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date.  You may be ordered to produce the Ballots to the Debtors or the Bankruptcy Court.

5.      The time by which a Ballot is **actually received** by the Solicitation Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is May 1, 2019, at 4:00 p.m., prevailing Central Time**.

6.      If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, Beneficial Holders should allow sufficient time to assure timely delivery.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Ballot will not be counted unless received by the Solicitation Agent.

7.      If multiple Master Ballots are received from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim prior to the Voting Deadline, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot.

8.      If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

9.      If a voter simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots shall not be counted.

10.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

11.     The Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or Interest; or (b) an assertion or admission with respect to any Claim or Interest.

12.     Please be sure to sign and date your Master Ballot.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.     If you are both the Nominee and the Beneficial Holder of any of the Class [#] Claims and you wish to vote such Class [#] Claims, you may return a Ballot or Master Ballot for such Class [#] Claims and you must vote your entire Class [#] Claims to either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot, other than a Master Ballot with the votes of multiple holders, that partially rejects and partially accepts the Plan will not be counted.

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

9

14.     The following Ballots and Master Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder of the Claim; (b) any Ballot or Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot or Master Ballot; (d) any Ballot or Master Ballot not marked to accept or reject the Plan; and (e) any Ballot or Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

15.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Creditor in a particular Class will be aggregated and treated as if such Creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

The following additional rules shall apply to Master Ballots:

16.     Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Class [#] Claims as of the Record Date, as evidenced by the record and depository listings;

17.     Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Class [#] Claims held by such Nominee;

18.     To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

19.     To the extent that overvotes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the overvote, but only to the extent of the Nominee's position in Class [#] Claims; and

20.     For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating its holding in that particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the claim amount.

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release provisions:[5]

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any**

---

[5]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this ballot.

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

Claim against, or Interest in, a Debtor or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:  the Debtors (including the management, ownership, or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, the Reorganized Debtors, and each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASED PARTY."

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; AND (L) ALL HOLDERS OF CLAIMS OR INTERESTS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASING PARTY."

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan.**

Article IX.E of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of**

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F hereof.

## PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY!

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 897-6433 (TOLL FREE) OR +1 (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM OR VIA EMAIL TO TABULATION@EPIQGLOBAL.COM AND REFERENCE "JONES ENERGY" IN THE SUBJECT LINE.**

*[Remainder of page intentionally left blank.]*

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

**Exhibit A**

## "ACCREDITED INVESTOR"

Rule 501(a) under Regulation D of the Securities Act of 1933, in relevant part, states that an "accredited investor" shall mean any person who comes within any of the below listed categories, or who the issuer reasonably believes comes within any of the below listed categories, at the time of the sale of the securities to that person.

(1)   Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2)   Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3)   Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4)   Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5)   Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000, subject to the calculation of such net worth as set forth in such Rule;

(6)   Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7)   Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in § 230.506(b)(2)(ii); and

(8)   Any entity in which all of the equity owners are accredited investors.

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

**Exhibit B**

*Please check a box below to indicate the Class to which this Master Ballot pertains and add the CUSIP No. to Item 2 on page 4.*

**CLASS [#] - [DESCRIPTION]**

| | BOND DESCRIPTION | CUSIP |
|---|---|---|
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |

[CUSIP AS INDICATED ON ATTACHED EXHIBIT B]

## __Exhibit 4__

**Form of Beneficial Holder Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| JONES ENERGY, INC., *et al.*,[1] | ) **IMPORTANT**: No chapter 11 case has been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
|  | ) |
|  | ) |
| Debtors. | ) |
|  | ) |

**BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE JOINT**
**PLAN OF REORGANIZATION OF JONES ENERGY, INC. AND ITS DEBTOR AFFILIATES**

**CLASS [#] - [DESCRIPTION]**

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE DEBTORS' SOLICITATION AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC (THE "SOLICITATION AGENT") AT (866) 897-6433 (TOLL FREE) OR +1 (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM, OR VIA EMAIL TO TABULATION@EPIQGLOBAL.COM AND REFERENCE "JONES ENERGY" IN THE SUBJECT LINE.

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT. THIS BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE TO THE DEBTORS' PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

- THIS BALLOT (OR THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BALLOT) MUST BE **ACTUALLY RECEIVED** BY THE SOLICITATION AGENT BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019** (THE "VOTING DEADLINE").[2]

- IF A BENEFICIAL HOLDER[3] HOLDS CLASS [#] CLAIMS IN ITS OWN NAME AND/OR THROUGH ONE OR MORE NOMINEES,[4] SUCH BENEFICIAL HOLDER MUST IDENTIFY ALL CLASS [#] CLAIMS HELD

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Jones Energy, Inc. (7968); Jones Energy, LLC (8861); CCPR Sub LLC (0942); Jones Energy Finance Corp. (6247); Jones Energy Holdings, LLC (5091); Jones Energy Intermediate, LLC (3552); JRJ Opco, LLC (1488); Nosley Acquisition, LLC (1548); Nosley Assets, LLC (6460); Nosley Midstream, LLC (8315); and Nosley SCOOP, LLC (1108). The location of Jones Energy, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is: 807 Las Cimas Parkway, Suite 350, Austin, TX 78746.

[2] Certain holders who are party to the Restructuring Support Agreement, dated as of April 1, 2019, by and among the Debtors and the noteholders party thereto, have agreed to submit their ballots to the Solicitation Agent by April 11, 2019.

[3] "Beneficial Holder" is a beneficial owner of Class [#] - [Description] whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through The Depository Trust Company and/or the applicable indenture trustee, as of the Voting Record Date.

[4] "Nominee" means a broker, dealer, commercial bank, trust company, or other nominee who holds Class 4 Claims, or such firm's agent.

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

IN ACCORDANCE WITH ITEM 5 OF THIS BALLOT, AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE IX OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS BALLOT.

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT AND THE DEBTORS' JOINT CHAPTER 11 PLAN (THE "PLAN")[5] OF JONES ENERGY, INC., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

The Company intends to file Chapter 11 Cases in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  The Company will file the Plan and the related *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Jones Energy, Inc. and its Debtor Affiliates* and all exhibits related thereto (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") with the Bankruptcy Court on or shortly after the date of the filing of the Chapter 11 Cases.  The Disclosure Statement, the Plan, and certain other materials contained in the solicitation package are included in the packet you are receiving with this Beneficial Holder Ballot.  This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

This ballot (the "Ballot") is being sent to you because records indicate that you are the Beneficial Holder of a Class [**#**] Claim as of **March 27, 2019** (the "Voting Record Date"), and, accordingly, you may have a right to vote to accept or reject the Plan.  **Only Accredited Investors (as such term is defined in Rule 501 of the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa) are entitled to vote to accept or reject the Plan**.  The definition of Accredited Investor is attached hereto as **Exhibit A**.  If you are not an Accredited Investor please disregard this Ballot.  CUSIPS for Class [**#**] Claims entitled to vote are identified on **Exhibit B** attached hereto.

**YOUR VOTE ON THIS BALLOT FOR CLASS [#] CLAIMS SHALL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE A CLASS [#] CLAIM.**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been placed in Class [#] under the Plan.  Attached to the Disclosure Statement is the Disclosure Statement Order which contains the Solicitation Procedures which govern the solicitation and tabulation of votes to accept or reject the Plan.*

---

[5]    Capitalized terms, used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019.**

**Item 1.  Amount of Class [#] - [Description] Claims.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder), of a Class [**#**] Claim in the following amount (*insert amount in box below*).  If your Claim is held by a Nominee on your behalf and you do not know the amount of the Class [**#**] Claims held, please contact your Nominee immediately:

$\qquad\qquad$ $ _____

**Item 2.  Vote of Class [#] - [Description].**

The Beneficial Holder of the Class [**#**] Claims  set forth in Item 1 votes to (*please check one*):

Check one box:    ☐    **Accept** the Plan

☐    **Reject** the Plan

**Item 3. Important Information Regarding Releases under the Plan.**[6]

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

$\qquad$ **Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:  the Debtors (including the management, ownership, or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or**

---

[6]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this ballot.

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, the Reorganized Debtors, and each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***RELEASED PARTY***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASED PARTY."

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; AND (L) ALL HOLDERS OF CLAIMS OR INTERESTS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASING PARTY."

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF A CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE. YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE BALLOT BY THE VOTING DEADLINE, (B) FILE AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE, OR (C) VOTE TO REJECT THE PLAN AND SUBMIT THE BALLOT BY THE VOTING DEADLINE. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

☐     **By checking this box, the Holder of the Class [#] Claim set forth in Item 1 elects to opt <u>out</u> of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**<u>Exculpation</u>**"):

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan.**

Article IX.E of the Plan establishes an injunction (the "**<u>Injunction</u>**"):

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F hereof.

**Item 4.  Information Regarding the Newco Partnership Equity Election.**

**PLEASE TAKE NOTE: ELECTING TO RECEIVE THE NEWCO PARTNERSHIP EQUITY PURSUANT TO THE NEWCO PARTNERSHIP EQUITY ELECTION MAY NOT BE SUITABLE FOR ALL INVESTORS. THE PARTNERSHIP INTERESTS ARE SOPHISTICATED AND ILLIQUID INSTRUMENTS AND ARE SUBJECT TO SIGNIFICANT TAX COMPLEXITY.  PLEASE CONSULT WITH YOUR INVESTMENT AND LEGAL ADVISORS BEFORE MAKING ANY ELECTION WITH RESPECT TO THE NEWCO PARTNERSHIP EQUITY.**

In one of two potential Plan transaction structures, the Debtors' assets will be transferred to an entity to be formed by a nominee of certain Holders of Claims (the "Newco Structure").  The Debtors will disclose whether the Newco Structure will be utilized in the Restructuring Transactions Memorandum, and such determination shall be acceptable to First Lien Noteholders holding at least a majority of the aggregate outstanding principal amount of First Lien Notes held by parties to the Restructuring Support Agreement.  The Newco Structure is commonly referred to as an "Up-C" structure.

In the event the Newco Structure is utilized, certain eligible Holders of Claims receiving New Common Equity that meet certain requirements described below (an "Eligible Electing Holder") may elect (the "Newco Partnership Equity Election") whether to receive their New Common Equity as either (a) equity in an entity taxed as a partnership for U.S. federal income tax purposes (the "Newco Partnership" and, such equity, the "Newco Partnership Equity") or (b) equity in an entity taxed as a corporation for U.S. federal income tax purposes (the "Newco Corporation" and, such stock the "Newco Corporation Stock").  Eligible Electing Holders of Claims that do not elect to receive Newco Partnership Equity and Holders of Claims that are not Eligible Electing Holders will receive Newco Corporation Stock.  A Holder of Claims entitled to New Common Equity will qualify as an Eligible Electing Holder if, among other things, the Holder (a) will receive least 1.1% of the New Partnership Equity,  and (b) affirms that such Holder satisfies certain tax requirements, including that such Holder (or, if such Holder is a disregarded entity for U.S. federal income tax purposes, its regarded owner for such purposes) is a United States person within the meaning of Section 7701(a)(30) of the Internal Revenue Code of 1986, as amended (the "Tax Code") or not otherwise subject to certain tax withholding provisions.  Eligible Electing Holders of Claims electing to receive Newco Partnership Equity shall also receive voting non-economic stock in the Newco Corporation (the "Corporation Voting Stock").  A Holder of Newco Partnership Equity shall be entitled, at such Holder's election and at the times specified in the final documentation, to exchange its Newco Partnership Equity and Corporation Voting Stock for Newco Corporation Stock based on a one for one exchange ratio.

In order to elect to receive Newco Partnership Equity, a Holder is required to make certain certifications and agree to certain conditions, as set forth below, and take other steps following Confirmation of the Plan.

---

The Newco Partnership will be treated as a partnership for U.S. federal and state income tax purposes. As such, items of taxable income, gain, loss, and deduction will flow up to holders of Newco Partnership Equity, without regard to whether sufficient cash distributions are made by the Newco Partnership to pay any associated tax liability.  It has not yet been determined whether and to what extent the Newco Partnership will be permitted or required to make so-called "tax distributions" and, if such distributions are made, at what tax rate they will be made.  More detail regarding tax distributions will be included in the New Organizational Documents.  As a result, holders of Newco Partnership Equity have meaningful risk of cash tax liability in excess of tax distributions received from the Newco Partnership.

In order to ensure the Newco Partnership does not become subject to the "publicly traded partnership" rules, substantial limitations will be imposed on the ability to transfer Newco Partnership Equity. Exchanges of Newco Partnership Equity are expected to be taxable for U.S. federal income tax purposes.

---

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

Holding Newco Partnership Equity may subject holders to state taxation and state tax reporting requirements in the states in which the Newco Partnership operates, subject to the potential application of certain combined or composite return regimes that are generally applicable only to individuals.

The information in this discussion and in the Disclosure Statement is not, and does not purport to be, a complete description of the U.S. federal, state, local and non-U.S. tax considerations associated with owning Newco Partnership Equity that may be applicable to a Holder of Claims and such Holder's particular circumstances.

In light of these considerations, the Debtors **strongly advise** that Holders of Claims seek advice from their own advisors prior to making a New Common Equity Election.

**Item 5.  Certification of Class [#] - [Description] Claims Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Claim identified in Item 1 certifies that (a) this Ballot is the only Ballot submitted for the Class [#] Claims owned by such Beneficial Holder as indicated in Item 1, except for the Claims identified in the following table, and (b) all Ballots for Class [#] Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Ballot (please use additional sheets of paper if necessary).  **To be clear, if any Beneficial Holder holds Class [#] Claims through one or more Nominees, such Beneficial Holder must identify all Class [#] Claims held through its own name and/or each Nominee in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

ONLY COMPLETE ITEM 5 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF CLASS [#] - [DESCRIPTION] CLAIMS

| Account Number of Other Class [#] Claims Voted | Name of Owner[7] | Principal Amount of Other Class [#] Claims Voted | CUSIP of Other Class [#] Claims Voted |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

---

[7]   **Insert your name if the Class [#] Claims are held by you in your own name or, if held in street name through a Nominee, insert the name of your broker or bank.**

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

**Item 6.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.  as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of Claims arising from the Class [#] in the amount set forth in Item 1;

b.  the Beneficial Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the solicitation package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.  the Beneficial Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the solicitation package or other publicly available materials;

d.  the Beneficial Holder has cast the same vote with respect to all of the Beneficial Holder's Class [#] Claims;

e.  the Beneficial Holder is an Accredited Investor as such term is defined in Rule 501 of the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa (attached for your reference to this Beneficial Holder Ballot as **Exhibit A**);

f.  the Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent;

g.  the Beneficial Holder understands and acknowledges that the Solicitation Agent may verify the amount of Class [#] Claims held by the Beneficial Holder as of the Voting Record Date set forth in Item 1 with any Nominee through which the Beneficial Holder holds its Class [#] Claims and by returning an executed Ballot the Beneficial Holder directs any such Nominee to provide any information or comply with any actions requested by the Solicitation Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Solicitation Agent, the amount shown on the records of the Nominee, if applicable, or the Debtors' records shall control; and

h.  the Beneficial Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Holder.

*[Remainder of page intentionally left blank.]*

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

**Item 7.  Beneficial Holder Information and Signature.**

Name of Beneficial Holder:_____
(*print or type*)

Signature:_____

Name of Signatory:_____
(*if other than Beneficial Holder*)

Title: _____

Address:_____

_____

_____

Date Completed:_____

<b>THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019.</b>

***IF YOU RECEIVED A RETURN BALLOT ADDRESSED TO THE SOLICITATION AGENT (EPIQ BANKRUPTCY SOLUTIONS, LLC)*, PLEASE COMPLETE, AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE*, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING INSTRUCTIONS, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 897-6433 (TOLL FREE) OR +1 (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM OR EMAIL TABULATION@EPIQGLOBAL.COM AND REFERENCE "JONES ENERGY" IN THE SUBJECT LINE.**

[*Remainder of page intentionally left blank.*]

<b>[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]</b>

## VOTING INSTRUCTIONS

1.  As described in the Disclosure Statement, the Debtors are soliciting the votes of Accredited Investors that are Beneficial Holders of Class [**#**] Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and Disclosure Statement are included in the solicitation package you received with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Plan. All capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your claim or claims under the Plan.

2.  The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Beneficial Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.  To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 2 of the Ballot; and (c) **sign and return the Ballot in accordance with the instructions received, so that this Ballot (if "pre-validated" by your Nominee) or a Master Ballot cast on your behalf is actually received by the Solicitation Agent by the Voting Deadline**. If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a master ballot ("Master Ballot"), and transmit the Master Ballot to the Solicitation Agent so that it is <u>actually received</u> by the Voting Deadline.

    **The Solicitation Agent will not accept beneficial ballots by email, facsimile or other electronic means.** If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot, including all certifications.

4.  The time by which a Ballot or Master Ballot including your vote is **actually received** by the Solicitation Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. **The Voting Deadline is May 1, 2019, at 4:00 p.m., prevailing Central Time.**

5.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery. No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors. A Ballot will not be counted unless received by the Solicitation Agent.

6.  The Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent.

7.  If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8.  If a Beneficial Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

9.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**

10.    The Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or Interest; or (b) an assertion or admission with respect to any Claim or Interest.

11.    Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12.    You must vote your entire Class [#] Claims either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted as a vote to accept or reject the Plan.

13.    Any Ballot that is properly completed, executed and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14.    The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15.    If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims indicated on that Ballot.  Please complete and return each Ballot you receive.

16.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

---

This Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certifications with respect to the Beneficial Holder Ballot.  Accordingly, at this time, holders of notes should not surrender certificates or instruments evidencing their notes, and neither the Debtor nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered with a Beneficial Holder Ballot.

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Solicitation Agent by phone at (866) 897-6433 (Toll Free) OR +1 (646) 282-2500 (International) and request to speak with a member of the Solicitation Team or via email to tabulation@epiqglobal.com and reference "JONES ENERGY" in the subject line.**

## PLEASE SUBMIT YOUR BALLOT PROMPTLY!

**[CUSIP AS INDICATED ON THE ATTACHED EXHIBIT B]**



**EXHIBIT A**

# "ACCREDITED INVESTOR"

Rule 501(a) under Regulation D of the Securities Act of 1933, in relevant part, states that an "accredited investor" shall mean any person who comes within any of the below listed categories, or who the issuer reasonably believes comes within any of the below listed categories, at the time of the sale of the securities to that person.

(1) Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000, subject to the calculation of such net worth as set forth in such Rule;

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in § 230.506(b)(2)(ii); and

(8) Any entity in which all of the equity owners are accredited investors.

## EXHIBIT B

*Your Nominee may have checked a box below to indicate the Note to which this Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Ballot.*

### CLASS [#] - [DESCRIPTION] CLAIMS

|  | BOND DESCRIPTION | CUSIP |
|---|---|---|
| ☐ |  |  |
| ☐ |  |  |
| ☐ |  |  |
| ☐ |  |  |
| ☐ |  |  |

### EXHIBIT C

**Beneficial Owner Election Worksheet for
Newco Partnership Equity Election**

**IF YOU ARE COMPLETING EXHIBIT C, DO NOT RETURN IT WITH YOUR BALLOT;
THIS WORKSHEET MUST BE RETRNED SEPARATELY FROM THE BALLOT
IN ACCORDANCE WITH THE DIRECTIONS BELOW.**

Please also see Item 4 of the Ballot regarding the Newco Partnership Equity Election.

**PLEASE TAKE NOTE: ELECTING TO RECEIVE THE NEWCO PARTNERSHIP EQUITY PURSUANT TO THE NEWCO PARTNERSHIP EQUITY ELECTION MAY NOT BE SUITABLE FOR ALL INVESTORS. THE PARTNERSHIP INTERESTS ARE SOPHISTICATED AND ILLIQUID INSTRUMENTS AND ARE SUBJECT TO SIGNIFICANT TAX COMPLEXITY. PLEASE CONSULT WITH YOUR INVESTMENT AND LEGAL ADVISORS BEFORE MAKING ANY ELECTION WITH RESPECT TO THE NEWCO PARTNERSHIP EQUITY.**

**Amount and type of Notes held. Please complete the following with respect to your holdings**

| BOND DESCRIPTION | CUSIP | AMOUNT HELD |
|---|---|---|
| 9.25% COUPON - 144A - FIRST LIEN - DUE 2023 | 48019TAF1 | |
| 9.25% COUPON – REG S - FIRST LIEN - DUE 2023 | U48008AC7 | |
| 6.75% COUPON - SR. UNSECURED - DUE 2022 | 48019TAB0 | |
| 9.25% COUPON - SR UNSECURED - DUE 2023 | 48019TAE4 | |

**Please check the box below if you wish to receive Newco Partnership Equity in lieu of Newco Corporation Stock, in the event the Newco Structure is utilized.** If you do not check the box, you will receive Newco Corporation Stock.

☐   **By checking this box, the Holder of the Class [#] Claim set forth in Item 1 (a) elects to receive Newco Partnership Equity with respect to the principal amount of account of Class [#] Claim and (b) agrees that it has made certain certifications as set forth below.**

**ONCE FULLY EFFECTED, THE ELECTION TO RECEIVE THE NEWCO PARTNERSHIP EQUITY PURSUANT TO THE NEW COMMON EQUITY ELECTION SHALL BE BINDING ON THE UNDERSIGNED HOLDER OF A CLASS [#] CLAIM**

By electing to receive the Newco Partnership Equity pursuant to the New Common Equity Election, the Beneficial Holder certifies:

- such Beneficial Holder will receive at least 1.1% of the Newco Partnership Equity (measured by overall economic ownership in the Reorganized Debtors, after accounting for dilution by the Management Incentive Plan);

- such Beneficial Holder understands all of the risks and responsibilities associated with holding Newco Partnership Equity and that such Beneficial Holder has independently determined that it is an appropriate investment for the Beneficial Holder;

- such Beneficial Holder acknowledges that making the New Common Equity Election constitutes the Beneficial Holder's request to receive distributions of Newco Partnership Equity under the Plan;

- such Beneficial Holder agrees to provide information regarding the Beneficial Holder's tax basis in its Claim to the extent the Newco Partnership determines such information is necessary for any tax reporting or compliance purpose, and to the extent the Newco Partnership is required to include any item of income or gain attributable to the exchange of Claims held by the Beneficial Holder for the Newco Partnership Equity, any such item of income or gain shall, to the greatest extent permitted by law, be specially allocated to such Beneficial Holder pursuant to section 704(c) of the Internal Revenue Code;

- a true and complete copy of Form W-8 or the applicable Form W-9 has been submitted with this Ballot with respect to such Beneficial Holder;

- such Beneficial Holder shall take no actions a principal purpose of which will be to avoid the 100-partner limitation in Treasury regulations Section 1.7704-1(h)(1)(ii) and Treasury regulation Section 1.7704-1(h)(3) does not apply with respect to such Beneficial Holder;

- the receipt of Newco Partnership Equity by such Beneficial Holder shall not cause the Newco Partnership to be subject to withholding requirements under sections 1445 or 1446 of the Internal Revenue Code; and

- such Beneficial Holder acknowledges and agrees that in the event any of the certifications in this paragraph (f) are determined to be untrue, to the greatest extent permitted by law, the election to receive Newco Partnership Equity shall be void *ab initio*, such Beneficial Holder shall be required to surrender any Newco Partnership Equity received as a result of such election in exchange for Newco Corporation Stock, and such Beneficial Holder shall be required to hold the Reorganized Debtors harmless for any resulting damages.

**In order to make the Newco Partnership Equity Election, holders will have to complete all of the following:**

1) **Return this completed Beneficial Owner Election Worksheet for Newco Partnership Equity Election by 4:00 P.M., prevailing Central Time, on May 1, 2019 in Portable Document Format (PDF) form via email to Tabulation@epiqglobal.com with "Jones Election" in the subject line;**

2) **When directed, complete the additional partnership paperwork and follow the directions on the forms for their return by a specified date.**

3) **When directed, approximately five (5) Business Days prior to the anticipated Effective Date, arrange for the Deposit/Withdrawal at Custodian ("<u>DWAC</u>") Withdrawal of the underlying Notes by the DTC participant holding your Notes.**

**Signature page follows.**

Jones Energy, Inc., *et al.*
Exhibit C – Beneficial Owner Election Worksheet

**Beneficial Holder Information and Signature.**

Date Completed:_____

Name of Beneficial Holder:_____
(*print or type*)

Signature:_____

Name of Signatory:_____
(*if other than Beneficial Holder*)

Title of Signatory: _____

Contact Name (if other than Signatory):_____

Address:_____

_____

_____

Contact Email Address:_____

Contact Telephone Number:_____

## **Exhibit 5**

**Form of Class 7 Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| JONES ENERGY, INC., *et al.*,[1] | **IMPORTANT**: No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
| Debtors. | |

**BALLOT FOR ACCEPTING OR REJECTING THE JOINT
PLAN OF REORGANIZATION OF JONES ENERGY, INC. AND ITS DEBTOR AFFILIATES**

**CLASS 7 - GENERAL UNSECURED CLAIMS AGAINST JEI AND JEI, LLC**

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE DEBTORS' SOLICITATION AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC (THE "SOLICITATION AGENT") AT (866) 897-6433 (TOLL FREE) OR +1 (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM, OR VIA EMAIL TO TABULATION@EPIQGLOBAL.COM AND REFERENCE "JONES ENERGY" IN THE SUBJECT LINE.

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.  THIS BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE TO THE DEBTORS' PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

- THIS BALLOT MUST BE **ACTUALLY RECEIVED** BY THE SOLICITATION AGENT BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019** (THE "VOTING DEADLINE").

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE IX OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS BALLOT.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Jones Energy, Inc. (7968); Jones Energy, LLC (8861); CCPR Sub LLC (0942); Jones Energy Finance Corp. (6247); Jones Energy Holdings, LLC (5091); Jones Energy Intermediate, LLC (3552); JRJ Opco, LLC (1488); Nosley Acquisition, LLC (1548); Nosley Assets, LLC (6460); Nosley Midstream, LLC (8315); and Nosley SCOOP, LLC (1108).  The location of Jones Energy, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is: 807 Las Cimas Parkway, Suite 350, Austin, TX 78746.

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT AND THE DEBTORS' JOINT CHAPTER 11 PLAN (THE "PLAN")[2] OF JONES ENERGY, INC., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.   THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.    THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

The Company intends to file Chapter 11 Cases in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  The Company will file the Plan and the related *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Jones Energy, Inc. and its Debtor Affiliates* and all exhibits related thereto (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") with the Bankruptcy Court on or shortly after the date of the filing of the Chapter 11 Cases.   The Disclosure Statement, the Plan, and certain other materials contained in the solicitation package are included in the packet you are receiving with this Ballot.  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

This ballot (the "Ballot") is being sent to you because records indicate that you are the Holder of a Class 7 Claim as of **March 27, 2019** (the "Voting Record Date"), and, accordingly, you may have a right to vote to accept or reject the Plan.

**YOUR VOTE ON THIS BALLOT FOR CLASS 7 CLAIMS SHALL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE A CLASS 7 CLAIM.**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been placed in Class 7 under the Plan.  Attached to the Disclosure Statement is the Disclosure Statement Order which contains the Solicitation Procedures which govern the solicitation and tabulation of votes to accept or reject the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019.**

**Item 1.  Amount of Class 7 - General Unsecured Claims against JEI and JEI, LLC.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory for a Holder), of a Class 7 Claim in the following amount (*insert amount in box below*).

$\$_____$

---

[2]    Capitalized terms, used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**Item 2.  Vote of Class 7 - General Unsecured Claims against JEI and JEI, LLC.**

The Holder of the Class **7** Claims  set forth in Item 1 votes to (*please check one*):

Check one box:          ❑          **Accept** the Plan

                        ❑          **Reject** the Plan

**Item 3. Important Information Regarding Releases under the Plan.**[3]

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

> **Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:  the Debtors (including the management, ownership, or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.**

> **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the**

---

[3]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this ballot.

**Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

> **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, the Reorganized Debtors, and each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.**

> **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Debtor Release and the Third-Party Release:

> UNDER THE PLAN, "***RELEASED PARTY***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL

PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASED PARTY."

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C)  THE FIRST LIEN NOTES TRUSTEE; (D) THE FIRST LIEN NOTES COLLATERAL AGENT; (E) THE FIRST LIEN AD HOC GROUP AND ALL MEMBERS THEREOF; (F) THE UNSECURED NOTES TRUSTEE; (G) THE CROSSOVER GROUP AND ALL MEMBERS THEREOF; (H) THE EXIT BACKSTOP PARTICIPANTS; (I) THE EXIT FACILITY AGENT; (J) THE EXIT FACILITY LENDERS; (K) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (J), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, AFFILIATES (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), ASSIGNS, SUBSIDIARIES, DIRECT AND INDIRECT EQUITY HOLDERS OR BENEFICIARIES, FUNDS, PORTFOLIO COMPANIES, AND MANAGEMENT COMPANIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING PARTIES IN CLAUSES (A) THROUGH (K), EACH OF SUCH PARTY'S CURRENT AND FORMER DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, PARTNERS, MANAGERS, GENERAL PARTNERS, LIMITED PARTNERS, MANAGING MEMBERS, INDEPENDENT CONTRACTORS, AGENTS, REPRESENTATIVES, PRINCIPALS, PROFESSIONALS, CONSULTANTS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, ADVISORY BOARD MEMBERS, INVESTMENT ADVISORS OR SUB-ADVISORS, AND OTHER PROFESSIONALS; AND (L) ALL HOLDERS OF CLAIMS OR INTERESTS; PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN, (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN BY THE PLAN OBJECTION DEADLINE, OR (Z) TIMELY VOTES TO REJECT THE PLAN SHALL NOT BE A "RELEASING PARTY."

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF A CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE BALLOT BY THE VOTING DEADLINE, (B) FILE AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE, OR (C) VOTE TO REJECT THE PLAN AND SUBMIT THE BALLOT BY THE VOTING DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐     **By checking this box, the Holder of the Class 7 Claim set forth in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any

Case 19-32112   Document 75   Filed in TXSB on 04/15/19   Page 65 of 69
Jones Energy, Inc., *et al.*
Ballot for Class **7** - General Unsecured Claims against JEI and JEI, LLC

Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan.

Article IX.E of the Plan establishes an injunction (the "**Injunction**"):

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F hereof.

**Item 4.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.      as of the Voting Record Date, the undersigned was the Holder (or authorized signatory for a Holder) of Claims arising from the Class 7 in the amount set forth in Item 1;

b.      the Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the solicitation package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.      the Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the solicitation package or other publicly available materials;

d.      the Holder has cast the same vote with respect to all of the Holder's Class 7 Claims;

e.      the Holder understands and acknowledges that if multiple Ballots are submitted voting the claim set forth in Item 1, only the last properly completed Ballot voting the claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent;

f.      the Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

*[Remainder of page intentionally left blank.]*

Jones Energy, Inc., *et al.*
Ballot for Class **7** - General Unsecured Claims against JEI and JEI, LLC

**Item 5.  Holder Information and Signature.**

Name of Holder:_____
                                    (*print or type*)

Signature:_____

Name of Signatory:_____
                                    (*if other than Holder*)

Title: _____

Address:_____

_____

_____

Date Completed:_____


**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MAY 1, 2019.**

***IF YOU RECEIVED A RETURN BALLOT ADDRESSED TO THE SOLICITATION AGENT (EPIQ BANKRUPTCY SOLUTIONS, LLC)*, PLEASE COMPLETE, AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING INSTRUCTIONS, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 897-6433 (TOLL FREE) OR +1 (646) 282-2500 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM OR EMAIL TABULATION@EPIQGLOBAL.COM AND REFERENCE "JONES ENERGY" IN THE SUBJECT LINE.**

*[Remainder of page intentionally left blank.]*

## <u>VOTING INSTRUCTIONS</u>

1.   As described in the Disclosure Statement, the Debtors are soliciting the votes of Holders of Class 7 Claims with respect to the Plan referred to in the Disclosure Statement.  The Plan and Disclosure Statement are included in the solicitation package you received with the Ballot.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.  All capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.  **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**  You may wish to seek legal advice concerning the Plan and the treatment of your claim or claims under the Plan.

2.   The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.   To ensure that your vote is counted, you must:  (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 2 of the Ballot; and (c) **sign and return the Ballot in accordance with the instructions received so the Ballot <u>is actually received by the Solicitation Agent by the Voting Deadline</u>. Ballots will not be accepted by email, facsimile or other electronic means.**

4.   The time by which a Ballot including your vote is **<u>actually received</u>** by the Solicitation Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is May 1, 2019, at 4:00 p.m., prevailing Central Time**.

5.   If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, Holders should allow sufficient time to assure timely delivery.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Ballot will not be counted unless received by the Solicitation Agent.

6.   The Holder understands and acknowledges that if multiple Ballots are submitted voting the claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent.

7.   If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8.   If a Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

9.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10.   The Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or Interest; or (b) an assertion or admission with respect to any Claim or Interest.

11.   Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12.   You must vote your entire Class **7** Claims either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted as a vote to accept or reject the Plan.

13.     Any Ballot that is properly completed, executed and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14.     The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15.     If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims indicated on that Ballot.  Please complete and return each Ballot you receive.

16.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

---

This Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certifications with respect to the Class 7 Ballot.  Accordingly, at this time, holders of notes should not surrender certificates or instruments evidencing their notes, and neither the Debtor nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered with a Class 7 Ballot.

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Solicitation Agent by phone at (866) 897-6433 (Toll Free) OR +1 (646) 282-2500 (International) and request to speak with a member of the Solicitation Team or via email to tabulation@epiqglobal.com and reference "JONES ENERGY" in the subject line.**

## <u>PLEASE SUBMIT YOUR BALLOT PROMPTLY!</u>