**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
05/06/2019

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JONES ENERGY, INC., *et al.*,[1] | ) | Case No. 19-32112 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | Re: Docket Nos. 8, 78 |

**FINAL ORDER (I) AUTHORIZING
POSTPETITION USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (III) MODIFYING
THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, Bankruptcy Local Rule 4001-1(b), and the Complex Case Procedures for entry of a final order (this "Final Order"), among other things:

(a)     authorizing, pursuant to section 363(c) of the Bankruptcy Code, the use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral") of the Prepetition Secured Parties (as defined below);

(b)     granting adequate protection to the Prepetition Secured Parties pursuant to sections 361 and 363(e) of the Bankruptcy Code on account of any diminution in value of the interest of the Prepetition Secured Parties in the Prepetition Collateral (as defined below), including Cash Collateral, resulting from the Debtors' use thereof during the pendency of the Chapter 11 Cases (as defined below);

(c)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to

---

1   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Jones Energy, Inc. (7968); Jones Energy, LLC (8861); CCPR Sub LLC (0942); Jones Energy Finance Corp. (6247); Jones Energy Holdings, LLC (5091); Jones Energy Intermediate, LLC (3552); JRJ Opco, LLC (1488); Nosley Acquisition, LLC (1548); Nosley Assets, LLC (6460); Nosley Midstream, LLC (8315); and Nosley SCOOP, LLC (1108).  The location of Jones Energy, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is:  807 Las Cimas Parkway, Suite 350, Austin, TX 78746.

2   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

implement and effectuate the terms and provisions of this Final Order and to deliver any notices of termination of the Restructuring Support Agreement (as defined below);

(d)      granting adequate protection liens on the proceeds and property recovered on account of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code or any similar state or federal law (collectively, the "Avoidance Actions");

(e)      except to the extent of the Carve Out (as defined below), approving the waiver by the Debtors of any right to surcharge the Prepetition Collateral or the Adequate Protection Collateral (each, as defined below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law;

(f)      approving the waiver by the Debtors of any right to assert an "equities of the case" claim against the Prepetition Secured Parties pursuant to section 552 of the Bankruptcy Code; and

(g)      granting related relief, all as more fully set forth in the Motion;

and due and sufficient notice of and opportunity for a hearing on the Motion having been given under the circumstances; and the Court having conducted (x) a preliminary hearing on the Motion (the "Preliminary Hearing"), at which time the Debtors presented, among other things, the First Day Declaration and the Henry Declaration and (y) a final hearing on the Motion (the "Final Hearing"); and the Court having reviewed the Motion, the First Day Declaration, the Henry Declaration, the evidence adduced by the parties, and the representations of counsel at the Preliminary Hearing and the Final Hearing; and the Court having entered, after the Preliminary Hearing, that certain *Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 78] (the "Interim Order"); and upon the entire record made at the Final Hearing; and the Court having considered the Interim Budget (as defined below) filed and served by the Debtors in accordance with the Complex Case Procedures; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions contained herein is necessary and essential to enable the

2

Debtors to preserve the value of their businesses and assets and to prevent immediate and irreparable harm to the Debtors' estates and to facilitate the reorganization of the Debtors' businesses, is fair and reasonable, and is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing to the Court that the legal and factual bases set forth in the Motion, at the Preliminary Hearing, and at the Final Hearing establish good and sufficient cause for the relief granted herein and that all objections to the entry of this Final Order have been withdrawn or are overruled; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      On the Petition Date, the Debtors filed voluntary petitions for relief with this Court under chapter 11 of the Bankruptcy Code and this Court has entered a final order for joint administration of these chapter 11 cases (collectively, the "Chapter 11 Cases").

C.      At the Preliminary Hearing, the Court approved the Motion on an interim basis pending the Final Hearing and entry of this Final Order.

D.      Without prejudice to the rights of any other party-in-interest in the Chapter 11 Cases (but subject to the limitations with respect to such rights contained in paragraphs 18 and 19 of this Final Order), the Debtors acknowledge, admit, agree, and stipulate that:

1.      As of the Petition Date, Jones Energy Holdings, LLC and Jones Energy Finance Corp., as issuers (the "First Lien Notes Issuers"), Jones Energy, Inc. ("JEI") and the other Debtors (excluding CCPR Sub LLC and JRJ Opco LLC), as guarantors (the "First Lien Notes Guarantors" and, collectively with the First Lien Notes Issuers, the "First Lien

3

Notes Obligors"), UMB Bank, N.A., as trustee (in such capacity, the "First Lien Notes Indenture Trustee"), and Wells Fargo Bank, National Association, as collateral agent (in such capacity, the "First Lien Notes Collateral Agent"), were parties to that certain indenture (as amended or supplemented from time to time, the "First Lien Notes Indenture") dated as of February 14, 2018.  Pursuant to the First Lien Notes Indenture, the First Lien Notes Issuers issued and the First Lien Notes Guarantors guaranteed the 9.250% Senior Secured First Lien Notes due 2023 (the "First Lien Notes").

2.      Pursuant to the First Lien Notes Indenture and the First Lien Notes, as of the Petition Date, the First Lien Notes Obligors were indebted to the First Lien Notes Indenture Trustee and the holders of the First Lien Notes (the "First Lien Noteholders" and, together with the First Lien Notes Indenture Trustee and the First Lien Notes Collateral Agent, the "Prepetition Secured Parties") in the aggregate amount of not less than $474.3 million, consisting of $450 million in the face amount of the First Lien Notes, plus accrued and unpaid interest, penalties, fees, expenses, reimbursements, indemnifications, and other "Obligations" as defined in the First Lien Notes Indenture (collectively, the "Prepetition Indebtedness").

3.      Prior to the Petition Date, Jones Energy Holdings, LLC, as borrower (the "RBL Borrower"), was also party to that certain Credit Agreement among the RBL Borrower, each of the lenders party thereto from time to time (the "RBL Lenders"), and Wells Fargo Bank, National Association ("Wells Fargo"), as administrative agent (in such capacity, the "RBL Agent"), dated as of December 31, 2009 (as amended or supplemented, from time to time, the "RBL Credit Agreement").  Pursuant to the terms of the payoff letter among the RBL Borrower, the RBL Agent, and the RBL Lenders, dated April 12, 2019, all obligations arising from and under the RBL Credit Agreement, including with respect to certain hedging obligations, have been satisfied in full and such satisfaction is indefeasible per the terms of the Interim Order.

4.      Wells Fargo has a valid, perfected, and unavoidable first priority lien and security interest in the cash it is holding to secure the Irrevocable Standby Letter of Credit No. IS0360485U, dated January 26, 2016, issued by Wells Fargo in favor of GLL Las Cimas, LLC.  Notwithstanding anything in this Final Order to the contrary, nothing in this Final Order shall authorize the use of such cash or otherwise limit, prejudice, impair, or prime the priority and enforceability of Wells Fargo's lien, security interest, and rights in such cash.

5.      Wells Fargo has a valid, perfected, and unavoidable first priority lien and security interest in the $60,000 it is holding to secure the Visa Business Cards under the Business Credit Card Agreement, dated December 10, 2010, by and between the Wells Fargo and the RBL Borrower (as amended, restated, supplemented or otherwise modified from time to time).  Notwithstanding anything in this Final Order to the contrary, nothing in this Final Order shall authorize the use of such cash or otherwise limit, prejudice, impair, or prime the priority and enforceability of Wells Fargo's lien, security interest and rights in such cash.

6.     To secure the Prepetition Indebtedness, pursuant to (i) the Amended and Restated Collateral Agreement, dated as of February 14, 2018, between the First Lien Notes Obligors (other than JEI) and the First Lien Notes Collateral Agent and (ii) the Amended and Restated Collateral Agreement, dated as of February 14, 2018, between JEI and the First Lien Notes Collateral Agent (collectively, the "Collateral Agreement" and, together with the First Lien Notes, the First Lien Notes Indenture, the "First Lien Documents"), the First Lien Notes Obligors have granted to the First Lien Notes Collateral Agent, for the ratable benefit of the Prepetition Secured Parties, liens on and security interests in (collectively, the "Prepetition Liens") all of the "Collateral" (as defined in the Collateral Agreement), consisting of substantially all of the Debtors' assets and property, whether real, personal or mixed, wherever located and whether then owned or thereafter acquired (collectively, the "Prepetition Collateral").

7.     Each of the First Lien Documents is valid, binding, and, subject to bankruptcy laws, enforceable against the First Lien Notes Obligors in accordance with its terms.  Pursuant to the terms of the First Lien Documents, all amounts payable on account of the Prepetition Indebtedness are now fully due and payable by the First Lien Notes Obligors.  The First Lien Notes Obligors are each jointly and severally indebted and liable to the Prepetition Secured Parties for such amounts without defense, counterclaim, or offset of any kind.

8.     The Prepetition Liens are valid, binding, perfected, enforceable, non-avoidable, first-priority liens on, and security interests in, the Prepetition Collateral, and are not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind pursuant to the Bankruptcy Code or other applicable law.

9.     The Debtors will not challenge or seek to avoid the validity, enforceability, priority, or perfection of the Prepetition Indebtedness or the Prepetition Liens.

10.    All cash proceeds of the Prepetition Collateral, including all such cash proceeds of such Prepetition Collateral held in any of the Debtors' banking, checking, or other deposit accounts with financial institutions (in each case, other than trust, escrow, and custodial funds held as of the Petition Date in properly established trust, escrow, and custodial accounts), are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

E.     Without prejudice to the rights of any other party (but subject to the limitations thereon described in paragraphs 18 and 19 of this Final Order), each Debtor and the Debtors' estates, on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, and assigns, hereby forever, fully, and finally, waives and releases any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses,

or setoff rights against each of the Prepetition Secured Parties, and each of their successors and assigns, whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law. The admissions, stipulations, agreements, and releases set forth in this Final Order are based upon and consistent with the results of the Debtors' investigation of the Prepetition Secured Parties' liens and claims.

F.      The preservation, maintenance, and enhancement of the value of the Debtors' assets are of the utmost significance and importance. The Debtors lack sufficient available sources of working capital, however, to carry on the operation of their businesses without the use of Cash Collateral. Moreover, the Debtors' need to use Cash Collateral is immediate. Absent the ability to use Cash Collateral, the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates would be inevitable.

G.      The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral to acquire equipment, inventory, and other personal property, all of which constitute Prepetition Collateral under the First Lien Documents and, accordingly, are subject to the valid and perfected liens and security interests of the First Lien Notes Collateral Agent for the ratable benefit of the Prepetition Secured Parties.

H.      The Debtors, certain holders of (or investment advisors, sub-advisors, or managers of discretionary accounts that hold) the First Lien Notes (the "Consenting First Lien Noteholders") and certain holders of (or investment advisors, sub-advisors, or managers of discretionary accounts that hold) the (i) 6.75% Senior Notes due 2022 issued pursuant to that certain indenture among the Debtors party thereto and U.S. Bank, N.A., as successor trustee, and (ii) 9.25% Senior Notes due 2023 issued pursuant to that certain indenture among the Debtors party thereto and U.S. Bank,

N.A., as successor trustee (the notes described in clauses (i) and (ii), the "Unsecured Notes" and the parties described in the foregoing, the "Consenting Unsecured Noteholders," and, together with the Consenting First Lien Noteholders, the "Consenting Stakeholders") are parties to that certain Restructuring Support Agreement, dated as of April 2, 2019 (the "Restructuring Support Agreement").

I.       The Debtors desire to use Cash Collateral under section 363(a) of the Bankruptcy Code.  The Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral exclusively on, and subject to, the terms and conditions set forth herein and solely for the period from the date of entry of this Final Order through the Termination Date (as defined below).

J.       The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and the Complex Case Procedures.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors to:  (i) the Office of the U.S. Trustee for the Southern District of Texas; (ii) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (iii) Wells Fargo Bank, N.A. as RBL Agent and First Lien Notes Collateral Agent; (iv) UMB Bank, N.A. as First Lien Indenture Trustee; (v) U.S. Bank, N.A. as successor trustee for the Unsecured Notes; (vi) Milbank LLP, as counsel to the ad hoc group of certain first lien noteholders (the "First Lien Ad Hoc Group"); (vii) Davis Polk & Wardwell LLP, as counsel to the hoc group of certain crossover noteholders (the "Crossover Group"); (viii) the United States Attorney's Office for the Southern District of Texas; (ix) the Internal Revenue Service; (x) the United States Securities and Exchange Commission; (xi) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (xii) the state attorneys general for states in which the Debtors conduct business; and (xiii) any party that

7

has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

K.      The adequate protection provided to the Prepetition Secured Parties, as set forth more fully in paragraph 5 of this Final Order, for any diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral from and after the Petition Date, as provided in paragraph 4 of this Final Order, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Parties from the diminution in the value of their respective interests in the Prepetition Collateral and (ii) obtain the foregoing consents and agreements.

L.      The Debtors stipulate that in permitting the Debtors to use Cash Collateral or in taking any other actions permitted by this Final Order, none of the Prepetition Secured Parties or the First Lien Notes Collateral Agent shall (i) have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, is used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors, their creditors, or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

M.      The Debtors stipulate that the First Lien Notes Collateral Agent and each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of

the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the First Lien Notes Collateral Agent or any of the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

N.      Based on the record before the Court, the terms of the Interim Order and this Final Order, including, without limitation, of the Debtors' use of Cash Collateral and the provision of adequate protection therefor, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms of this Final Order were negotiated in good faith and at arm's length between the Debtors, the First Lien Notes Collateral Agent, the Prepetition Secured Parties, and the Consenting Stakeholders.

O.      The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2), Bankruptcy Local Rule 4001-1, and the Complex Case Procedures.  The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates. The Court concludes that entry of this Final Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow the Debtors to preserve and maintain the value of their assets and businesses and enhance the Debtors' prospects for a successful reorganization.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before the Court at the Preliminary Hearing and the Final Hearing, and good and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ON A FINAL BASIS:**

1.      <u>Motion</u>.  The Motion is granted, subject to the terms and conditions set forth in this Final Order.  The Debtors shall not use any Cash Collateral except as expressly authorized and

permitted herein or by subsequent order of the Court.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      <u>Use of Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, including specifically the Carve Out, the Debtors are hereby authorized to use Cash Collateral in accordance with the Interim Budget (as defined below), as set forth in paragraph 3, during the period from the date of this Final Order through and including the Termination Date (as defined in paragraph 10) for (i)  working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day relief, subject to the terms hereof and (ii) adequate protection payments to the Prepetition Secured Parties, as detailed in the Interim Budget and as provided in the Interim Order and herein.

3.      <u>Interim Budget; Use of Collateral Proceeds</u>.

(a)      The Debtors' use of Cash Collateral shall be in accordance with and pursuant to the Interim Budget attached to the Interim Order as **<u>Exhibit 1</u>** (the "<u>Interim Budget</u>").  The Debtors shall provide a new Interim Budget to the First Lien Notes Collateral Agent on the fourth business day after every fourth week (the "<u>Interim Budget Period</u>"), beginning with the first fourth business day after the fourth full week after the Petition Date and ending on the week during which the Confirmation Order is entered and each such new Interim Budget shall be reasonably acceptable to the Required First Lien Noteholders.  For each Interim Budget Period, the aggregate actual expenditures by the Debtors for Total Disbursements (as designated in the Interim Budget and which, for the avoidance of doubt, shall include the fees budgeted for and actually expended on the Debtor Professionals) shall not in any event exceed the aggregate amount budgeted therefor in the Interim Budget for such period by more than fifteen percent (15%) of the budgeted amount.

(b)      The authorization granted herein is solely with respect to the use of Cash Collateral.

(c)      Unless otherwise agreed to in writing by the Required First Lien Noteholders,[3] the Debtors shall not maintain any accounts except those identified in

---

[3]      "<u>Required First Lien Noteholders</u>" means "Required First Lien Debtholders" (as such term is defined under the First Lien Notes Indenture); *provided* that, the Consenting First Lien Noteholders that are parties to the Restructuring Support Agreement constitute Required First Lien Debtholders under the First Lien Notes Indenture.

<u>Exhibit 2</u> to the *Interim Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System and Maintain Existing Bank Accounts, (B) Maintain Existing Business Forms, (C) Pay any Prepetition or Postpetition Amounts Outstanding on account of the Bank Fees, and (D) Continue to Perform the Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 64] (the "<u>Cash Management Order</u>").

     (d)     Neither the consent to any Interim Budget nor anything else herein shall be deemed or construed as agreement by the First Lien Notes Collateral Agent or the Prepetition Secured Parties to be surcharged under section 506(c) or any other provision of the Bankruptcy Code or equitable doctrine.

     4.     <u>Entitlement to Adequate Protection</u>.  The First Lien Notes Collateral Agent and the Prepetition Secured Parties shall be entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate postpetition diminution or decrease in value of the First Lien Notes Collateral Agent's or Prepetition Secured Parties' interest in the Prepetition Collateral resulting from the sale, lease, or use by the Debtors of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, from and after the Petition Date (such diminution in value, the "<u>Adequate Protection Obligations</u>").

     5.     <u>Adequate Protection</u>.  As adequate protection, the Prepetition Secured Parties are hereby granted the following claims, liens, rights, and benefits:

     (a)     <u>Section 507(b) Claim</u>.  The Adequate Protection Obligations due to the Prepetition Secured Parties shall constitute allowed joint and several superpriority administrative claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising in the Chapter 11 Cases (subject and subordinate only to the Carve Out), including all claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings, including without limitation any Chapter 7 proceeding, under the Bankruptcy Code (the "<u>507(b) Claim</u>"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, and the proceeds and property recovered in respect of any Avoidance Actions.

     (b)     <u>Adequate Protection Liens</u>.  Effective as of the Petition Date, solely to the extent of the Adequate Protection Obligations, the following security interests and liens (the "<u>Adequate Protection Liens</u>") are hereby granted to the First Lien Notes Collateral Agent on behalf of the Prepetition Secured Parties, subject and subordinate only to the Carve Out (all property identified below being collectively referred to as the "<u>Adequate Protection Collateral</u>"):

     (i)     <u>First Priority Liens on Unencumbered Property</u>.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority lien and/or replacement lien on, and security interest in, all of the Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition assets of the Debtors' estates, and all products, proceeds, rents and profits thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable, and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "<u>Unencumbered Property</u>").  Upon the entry of this Final Order, the Unencumbered Property shall include, and the Adequate Protection Liens shall attach to, any proceeds or property recovered in respect of any Avoidance Action;

     (ii)     <u>Liens Junior to Certain Existing Perfected Liens</u>.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable junior priority replacement lien on, and security interest in, all of Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (i) of this paragraph 5(b)), that is subject to (x) valid, perfected, non-avoidable, and enforceable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected, non-avoidable, and enforceable liens are senior in priority to the Prepetition Liens (the "<u>Other Senior Liens</u>"); and

     (iii)     <u>Liens Senior to Certain Existing Liens</u>.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Collateral and all of the Debtors' now-owned

and hereafter-acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and all products, proceeds, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided* that such liens and security interests shall not prime the Other Senior Liens.

6.      <u>Perfection of Adequate Protection Liens</u>.   The Adequate Protection Liens are perfected without the necessity of the execution (or recordation or other filing) by the Debtors of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or the possession or control by the First Lien Notes Collateral Agent of any Adequate Protection Collateral.   The First Lien Notes Collateral Agent, on behalf of the Prepetition Secured Parties, is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to each hereunder, respectively.   Whether or not the First Lien Notes Collateral Agent, in its sole discretion, chooses to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination as of the date of entry of the Interim Order.   If the First Lien Notes Collateral Agent determines to file any financing statements, agreements, notice of liens or similar instruments, the Debtors shall cooperate and assist in any such filings as reasonably requested by the First Lien Notes Collateral Agent, and the automatic stay shall be modified to allow such filings.   For the avoidance of doubt, the Debtors are permitted to release liens and execute mortgages with respect to their oil and gas leases in the ordinary course of business in connection with ordinary course acreage swaps related to the Debtors' joint operating agreements

and resolutions of any disputes thereunder so long as the liens of the Prepetition Secured Parties extend to any acreage acquired pursuant to such acreage swaps.

7.     A certified copy of this Final Order may, in the discretion of the First Lien Notes Collateral Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Final Order for filing and recording; *provided* that, notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of the Interim Order.

8.     <u>Carve Out</u>.

(a)     <u>Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $100,000.00 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and any official committee appointed in the Chapter 11 Cases (each, a "<u>Committee</u>") pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first business day following delivery by the First Lien Notes Collateral Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,500,000 incurred after the first business day following delivery by the First Lien Notes Collateral Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "<u>Post-Carve Out Trigger Notice Cap</u>").  For purposes of the foregoing, "<u>Carve Out Trigger Notice</u>" shall mean a written notice delivered by email (or other electronic means) by the First Lien Notes Collateral Agent (at the direction of the applicable Prepetition Secured Parties) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event (as defined below) and upon termination of the Debtors' right to use Cash Collateral by the Prepetition Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the First Lien Notes Collateral Agent to the Debtors (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the First Lien Notes Collateral Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Indebtedness has been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the First Lien Notes Collateral Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Indebtedness has been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the First Lien Notes Indenture, the Interim Order, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 8(b), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 8(b), prior to making any payments to the First Lien Notes Collateral Agent or any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the First Lien Notes Indenture, the Interim Order, or this Final Order, following delivery of a Carve Out Trigger Notice, the First Lien Notes Collateral Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the First Lien Notes Collateral Agent for application in accordance with the First Lien Notes Indenture.  Further, notwithstanding anything to the contrary in the Interim Order or this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Obligations (as defined in the First Lien Notes Indenture) or increase or reduce the Prepetition Indebtedness, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way

shall the Interim Budget, Carve Out, Post-Carve Out Trigger Notice Cap, or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Order, this Final Order, or in any First Lien Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Indebtedness.

(c)     Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)     No Direct Obligation To Pay Allowed Professional Fees. None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)     Payment of Carve Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

9.     Additional Adequate Protection. As additional adequate protection:

(a)     Fees and Expenses: The Debtors are authorized and directed to pay, in accordance with this paragraph 9(a), all pre- and postpetition reasonable and documented fees and expenses, when due, of the Prepetition Secured Parties and the RBL Agent (whether incurred directly or on their behalf) and their advisors, including, without limitation, the fees and expenses of all outstanding and unpaid amounts incurred since the inception of the applicable agreement fee or engagement letters of the attorneys, accountants, other professionals, advisors and consultants, including the fees and expenses of:  (i) the First Lien Ad Hoc Group, which shall include (a) Milbank, as counsel to the First Lien Ad Hoc Group, (b) Porter Hedges LLP, as local counsel to the First Lien Ad Hoc Group, (c) Lazard, as investment banker to the First Lien Ad Hoc Group (including any success or transaction fees when earned); (ii) the Crossover Group, which shall include: (a) Davis Polk & Wardwell LLP, as counsel to the Crossover Group, (b) Haynes and Boone, LLP, as local counsel to the Crossover Group, and (c) Houlihan Lokey Capital Inc., as financial advisor to the Crossover Group; (iii) the Consenting Stakeholders in accordance with the Restructuring Support Agreement; (iv) the First Lien Notes Indenture Trustee, which shall include (a) Katten Muchin Rosenman LLP as counsel to the First Lien Notes Indenture Trustee, and (b) one local counsel to the First Lien Notes Indenture Notes Trustee, if any; (v) the First Lien Notes Collateral Agent, which shall include (a) Kelley

16

Drye & Warren LLP as counsel to the First Lien Notes Collateral Agent, and (b) one local counsel to the First Lien Notes Collateral Agent, if any; and (vi) Bracewell LLP, as counsel to Wells Fargo; *provided* that the fees and expenses provided for in clauses (i)-(iii) of this paragraph 9(a) shall be payable only to the extent set forth in the Restructuring Support Agreement, including that the Debtors shall not be required to pay the fees and expenses of the foregoing advisors following the Termination Date of the Restructuring Support Agreement (as such term is defined therein). The professionals, advisors, and consultants receiving payment under this paragraph 9(a) shall provide the U.S. Trustee and any statutory committee, if any, with summary invoices of any fees and expenses incurred.

(b)    <u>Other Covenants</u>:  The Debtors shall maintain their cash management arrangements in a manner consistent with the Cash Management Order. The Debtors shall not use, sell, or lease any material assets outside the ordinary course of business, or seek authority of the Court to do any of the foregoing, without the consent of the Required First Lien Noteholders at least five (5) business days prior to the date on which the Debtors seek the authority of the Court for such use, sale, or lease. The Debtors shall comply with the covenants contained the First Lien Documents regarding the maintenance and insurance of the Prepetition Collateral and the Adequate Protection Collateral.

(c)    <u>Limitation on Liens</u>:  The Debtors shall not create, incur, or suffer to exist any postpetition liens or security interests other than:  (i) those granted pursuant to the Interim Order and this Final Order; (ii) carriers', mechanics', operators', repairmen's, warehousemen's, or other similar liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance, and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations and prepetition or postpetition performance bonds or surety bonds listed in the *Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered into Prepetition and Satisfy Prepetition Obligations Related Thereto, (B) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies, (C) Continue the Surety Bond Program, and (II) Granting Related Relief* [Docket No. 12].

(d)    <u>Reporting</u>:  The Debtors shall comply with the reporting requirements set forth in the First Lien Notes Indenture.

(e)    <u>Access</u>:  In addition to, and without limiting, whatever rights to access the First Lien Notes Collateral Agent and Prepetition Secured Parties have under their respective First Lien Documents, upon reasonable prior written notice, at reasonable times during normal business hours, and otherwise not to be unreasonably withheld, the Debtors shall permit representatives, advisors, agents, and employees of the Consenting Stakeholders (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors, and counsel.

10.    <u>Termination</u>.  The Debtors' right to use Cash Collateral pursuant to this Final Order shall terminate (the date of any such termination, the "<u>Termination Date</u>") (subject only to the

Carve Out) without further notice or court proceeding five (5) business days (any such five-business-day period of time, the "Default Notice Period") following the delivery of a written notice (a "Default Notice") by the First Lien Notes Collateral Agent or the Required First Lien Noteholders to the Debtors, the U.S. Trustee, any statutory committee, if any, and counsel to the Consenting Stakeholders of the occurrence of any of the events set forth below unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period or such occurrence is waived by the Required First Lien Noteholders in their sole discretion; *provided* that, during the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in accordance with the terms of this Final Order; *provided*, *further*, that if a hearing to consider any relief in connection with the delivery of the Default Notice or continued use of Cash Collateral is requested to be heard within such Default Notice Period but is scheduled for a later date by the Court, the Default Notice Period shall be automatically extended to the date of such hearing; *provided*, *further*, that the Prepetition Secured Parties shall file a notice seeking a hearing on Cash Collateral as soon as reasonably practicable and before the expiration of the Default Notice Period (the events set forth in clauses (a) through (r) below are collectively referred to as the "Termination Events"):

> (a)    Failure of the Debtors to make any payment under the Interim Order or this Final Order after such payment becomes due;

> (b)    Failure of the Debtors to comply with any material provisions of the Interim Order or this Final Order;

> (c)    Except with respect to a termination under Section 12.01(o) of the Restructuring Support Agreement that is solely based on the failure of the Company Parties to satisfy the Milestone (as defined therein) set forth in Section 4(a)(iv) of the Restructuring Support Agreement by the date specified therein, the Restructuring Support Agreement has been terminated with respect to the Consenting Stakeholders;

> (d)    The Company Parties have failed to make any payment contemplated under the Restructuring Support Agreement when due;

(e)       The Debtors shall grant, create, incur, or suffer to exist any postpetition liens or security interests other than:  (i) those granted pursuant to the Interim Order or this Final Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's, or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance, and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds, and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the First Lien Documents;

(f)       An order shall be entered reversing, amending, supplementing, staying, vacating, or otherwise modifying this Final Order without the written consent of the Required First Lien Noteholders;

(g)       The Debtors' commencing, or participating in furtherance of, any solicitation of any plan of reorganization unless it is the Plan (as defined in the Restructuring Support Agreement) or such other plan of reorganization as the Required First Lien Noteholders shall have expressly consented to in writing;

(h)       The Court shall terminate or reduce the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(i)       The entry of an order in the Chapter 11 Cases charging any of the Prepetition Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or section 506(c) of the Bankruptcy Code or under which any person takes action against the Prepetition Collateral or Adequate Protection Collateral (in each case, that becomes a final non-appealable order), or the commencement of other actions that are materially adverse to any of the First Lien Notes Collateral Agent or the Prepetition Secured Parties or their respective rights and remedies under the First Lien Documents in the Chapter 11 Cases;

(j)       The entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any Prepetition Collateral with a value in excess of $2 million;

(k)       The entry of any postpetition monetary judgment against any Debtor in excess of $2 million;

(l)       The payment of any prepetition claims that are junior in interest or right to the Prepetition Liens, other than as permitted by an order entered in the Chapter 11 Cases;

(m)       The existence of any claims or charges, or the entry of any order of the Court authorizing any claims or charges, other than as permitted under the Interim Order or this Final Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the Prepetition Indebtedness, or there shall arise or be granted by the

Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code (other than the Carve Out), including the 507(b) Claim or (ii) subject to the Other Senior Liens, any lien on the Prepetition Collateral or Adequate Protection Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in the First Lien Documents, the Interim Order, or in this Final Order;

(n)     The Court shall have entered an order dismissing any of the Chapter 11 Cases;

(o)     The Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(p)     The Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the Debtors' businesses or the Chapter 11 Cases, unless consented to in writing by the Required First Lien Noteholders;

(q)     A filing by any Debtor of any motion, pleading, application, or adversary proceeding challenging the validity, enforceability, perfection, or priority of the Prepetition Liens or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Collateral, the First Lien Notes Collateral Agent, or any of the Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application, or adversary proceeding commenced by any third party); and

(r)     The Debtors shall obtain court authorization to commence, or shall commence, join in, assist, or otherwise participate as an adverse party in any suit or other proceeding against the First Lien Notes Collateral Agent or any of the Prepetition Secured Parties relating to the Prepetition Indebtedness.

11.     <u>Remedies upon the Termination Date</u>.  Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable, and (b) the First Lien Notes Collateral Agent may exercise the rights and remedies available under the First Lien Documents, the Interim Order, this Final Order, or applicable law (subject only to the Carve Out), including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral.  The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions; *provided* that during the Default Notice Period, unless the Court orders otherwise, the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain

in effect.  The rights of the Debtors to oppose any relief requested by the First Lien Notes Collateral Agent or Prepetition Secured Parties (and the rights of the First Lien Notes Collateral Agent or Prepetition Secured Parties to oppose any request for relief by the Debtors) are fully reserved.  Any delay or failure of the First Lien Notes Collateral Agent or Prepetition Secured Parties to exercise rights under the First Lien Documents, the Interim Order, or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document. Without limiting the Debtors' rights under the Interim Order, this Final Order, the First Lien Notes Collateral Agent shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Adequate Protection Collateral in accordance with the provisions of the First Lien Loan Documents and in no event shall the First Lien Notes Collateral Agent or any of Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the Adequate Protection Collateral, or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits, and protections provided to the First Lien Notes Collateral Agent and the Prepetition Secured Parties under the Interim Order or this Final Order shall survive the Termination Date.

12.  <u>Limitation on Charging Expenses Against Collateral</u>.  Except to the extent of the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Adequate Protection Collateral, the First Lien Notes Collateral Agent, or the Prepetition Secured Parties pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without

the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by the First Lien Notes Collateral Agent or any of the Prepetition Secured Parties. Neither the Consenting First Lien Noteholders' consent to any Interim Budget nor anything else herein shall be deemed or construed as agreement by the Prepetition Secured Parties to be surcharged under section 506(c) or any other provision of the Bankruptcy Code or equitable doctrine.

13.     Payments Free and Clear. Any and all payments pursuant to paragraphs 5 and 9(a) of this Final Order shall be irrevocable and received free and clear of any claim, lien, charge, assessment, or other encumbrance, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

14.     Bankruptcy Code Section 552(b). The First Lien Notes Collateral Agent and each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of them with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral.

15.     Reservation of Rights of the First Lien Notes Collateral Agent and Prepetition Secured Parties. Notwithstanding any other provision hereof, the grant of adequate protection to the First Lien Notes Collateral Agent and the Prepetition Secured Parties pursuant to this Final Order is without prejudice to their respective rights to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection; *provided* that the relative priority of all such additional adequate protections shall be the same as set forth in paragraph 5 of this Final Order and without prejudice to the right of the Debtors or any other

party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify, or otherwise impair the respective rights of the First Lien Notes Collateral Agent or the Prepetition Secured Parties under the First Lien Documents under any applicable law or in equity, and the First Lien Notes Collateral Agent and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the First Lien Documents, under any applicable law, or in equity in connection with all Termination Events and Defaults and Events of Default (as defined in the applicable First Lien Documents and whether arising prior to or after the Petition Date).

16.     <u>Debtors' Reservation of Rights</u>. Notwithstanding anything to the contrary in this Final Order, following receipt of a Default Notice, and at any time before or after the occurrence of the Termination Date, including without limitation as a result of a Termination Event pursuant to paragraph 10 of this Final Order, the Debtors may seek authority to use Cash Collateral without the consent of the Required First Lien Noteholders, and the Consenting First Lien Noteholders reserve all rights to contest such use.

17.     <u>Modification of Automatic Stay</u>. The Debtors are authorized and directed to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of the Interim Order, this Final Order, and the transactions contemplated hereby. All parties to the Restructuring Support Agreement are also authorized to deliver any notices of termination of the Restructuring Support Agreement in compliance with the terms thereof. The stay under section 362 of the Bankruptcy Code is hereby modified to permit the Debtors, the First Lien Notes Collateral Agent, each of Prepetition Secured Parties, and the Consenting Stakeholders to accomplish the transactions contemplated by the Interim Order and this Final Order.

18.     <u>Preservation of Rights Granted Under this Final Order</u>.

(a)     Except as expressly provided in this Final Order, no claim or lien having a priority senior to or *pari passu* with those granted by this Final Order to the Prepetition Secured Parties shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or, except as set forth in the Collateral Agreement, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Notwithstanding any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (i) the 507(b) Claim, the other administrative claims granted pursuant to this Final Order, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such 507(b) Claim, the other administrative claims granted pursuant to this Final Order, and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (i) above.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect: (i) the validity, priority, or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the First Lien Notes Trustee of the effective date of such reversal, stay, modification, or vacatur; or (ii) the validity, priority, or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification, or vacatur, any use of the Prepetition Collateral (including Cash Collateral) or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the First Lien Notes Trustee of the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Final Order, and the First Lien Notes Collateral Agent and the Prepetition Secured Parties (subject to the provisions of the Collateral Agreement) shall be entitled to all of the rights, remedies, privileges, and benefits granted herein and to the protections afforded in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral (including the Cash Collateral) and all Adequate Protection Obligations.

(d)     The adequate protection payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense, or avoidance in the Chapter 11 Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)     Except as expressly provided in this Final Order, the Adequate Protection Obligations, the 507(b) Claim, and the Adequate Protection Liens and all other rights and remedies of the First Lien Notes Collateral Agent and the Prepetition Secured Parties granted by this Final Order shall survive, and shall not be modified, impaired, or discharged

by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases (except to the extent such plan of reorganization (A) discharges the 507(b) Claim and the Adequate Protection Liens and (B) is supported by the Consenting Stakeholders) and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any Adequate Protection Obligations.  The terms and provisions of this Final Order shall continue in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claim, the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the First Lien Notes Collateral Agent and the Prepetition Secured Parties granted by the provisions of this Final Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

19.    <u>Effect of Stipulations</u>.  As a result of the Debtors' review of the First Lien Documents and the facts and circumstances relating thereto, the Debtors have agreed to the various stipulations and made the various admissions contained in the Interim Order and in this Final Order, including without limitation, the stipulations and admissions included in paragraph D, which stipulations and admissions shall be binding upon the Debtors and any successors thereto in all circumstances.  The stipulations and admissions contained in the Interim Order and in this Final Order, including without limitation, in paragraph D of this Final Order, shall also be binding upon all other parties in interest, including any Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "<u>Trustee</u>"), for all purposes unless (a) such party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so), having obtained the requisite standing, has filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to the limitations contained herein, including, without limitation, in this paragraph 19 of this Final Order) by no later than the date that is the earlier of (i) the effective date under a confirmed plan of reorganization and (ii) the day that is 60 days from the date of the entry of this Final Order (as such date may be extended by the Required First Lien Noteholders) (the "<u>Challenge Period</u>")

25

(A) challenging the amount, validity, enforceability, priority, or extent of the First Lien Notes Indebtedness or the Prepetition Liens, or (B) otherwise asserting any other claims, counterclaims, causes of action, objections, contests, or defenses against the First Lien Notes Collateral Agent or any of the Prepetition Secured Parties on behalf of the Debtors' estates (collectively, the "Claims and Defenses"), and (b) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided* that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished effective as of the Petition Date.  If no adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of the Court:   (w) the Debtors' stipulations and admissions contained in the Interim Order and in this Final Order shall be binding on all parties in interest, including the Committee; (x) the First Lien Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense, or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, and of the priority specified in paragraph D, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; and (z) the Prepetition Liens shall not be subject to any other or further challenge by the Committee or any other party in interest, and any such Committee or other party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period) with respect thereto; *provided* that if the Chapter 11 Cases are converted to chapter 7 or a Trustee is appointed in the Chapter 11 Cases prior to the expiration of the Challenge Period, any Trustee shall receive the full benefit of

any remaining Challenge Period, subject to the limitations described herein).  If any such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in the Interim Order and in this Final Order, including without limitation, in paragraph D of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph 19) on the Committee and any other person, including any Trustee, except as to any such findings and admissions that were expressly challenged in such adversary proceeding or contested matter.  Nothing in the Interim Order or in this Final Order vests or confers on any person, including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.  In the event that there is a timely successful challenge brought pursuant to this paragraph 19, the Court shall retain jurisdiction to fashion an appropriate remedy.

20.     <u>Limitation on Use of Collateral</u>.   The Debtors shall use the proceeds of the Prepetition Collateral solely as provided in this Final Order.  Notwithstanding anything herein or in any other order of the Court to the contrary, and subject to the Carve Out, no Cash Collateral may be used to:  (a) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Indebtedness, the Prepetition Liens, or the liens or claims granted under this Final Order; (b) assert any Claims and Defenses against the First Lien Notes Collateral Agent or any of the Prepetition Secured Parties or their respective agents, affiliates, representatives, attorneys, or advisors; (c) seek to modify any of the rights granted to the First Lien Notes Collateral Agent and the Prepetition Secured Parties hereunder; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court; *provided* that, notwithstanding anything to the contrary herein, no more than $25,000 in the aggregate of the Prepetition Collateral or the Carve Out may be used by any

Committee to investigate the validity, enforceability, or priority of the Prepetition Indebtedness or the Prepetition Liens, or investigate any Claims and Defenses or other causes action against the First Lien Notes Collateral Agent or any of the Prepetition Secured Parties.

21.    <u>Binding Effect; Successors and Assigns</u>.   The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the First Lien Notes Collateral Agent and the Prepetition Secured Parties, any Committee and the Debtors and their respective successors and assigns (including any Trustee, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the First Lien Notes Collateral Agent, the Prepetition Secured Parties, and the Debtors and their respective successors and assigns; *provided* that, except to the extent expressly set forth in this Final Order, the First Lien Notes Collateral Agent and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by the Debtors or by any Trustee or similar responsible person appointed for the estate of any Debtor.  For all adequate protection and stay relief purposes throughout the Chapter 11 Cases, the First Lien Notes Collateral Agent and Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date.  For the avoidance of doubt, such request will survive termination of this Final Order.

22.    <u>Limitation of Liability</u>.   In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, none of the Prepetition Secured Parties or the First Lien Notes Collateral Agent shall (a) have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as

a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute) or (b) owe any fiduciary duty to any of the Debtors, their creditors, or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the First Lien Notes Collateral Agent or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

23.     <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.  To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

24.     <u>Proofs of Claim</u>.  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or successor cases, and the Debtors' stipulations in paragraph D herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s).  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or successor cases shall not apply to the Prepetition Secured Parties with respect to the Prepetition

Indebtedness.  Notwithstanding the foregoing, the First Lien Notes Trustee (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the applicable Prepetition Secured Parties arising from the First Lien Documents; *provided* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

25.     Headings.  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

26.     Jurisdiction.  The Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

27.     Controlling Effect of Final Order.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or the Interim Order, the provisions of this Final Order shall control to the extent of such conflict.

IT IS SO ORDERED.

  **Signed:  May 06, 2019.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**